**2024 IL 130191**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

(Docket No. 130191)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v.
RYANN N. JOHNSON, Appellant.

*Opinion filed November 21, 2024.*

JUSTICE OVERSTREET delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Neville, Holder White, Cunningham, Rochford, and O'Brien concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant was convicted, by jury, of aggravated domestic battery (720 ILCS 5/12-3.3(a-5) (West 2018)). After considering statutory factors in mitigation and aggravation, the circuit court of Logan County imposed an extended-term sentence of 10 years' imprisonment. The appellate court found that defendant forfeited his argument on appeal that the circuit court considered improper factors in aggravation

when imposing the sentence. 2023 IL App (4th) 230087-U, ¶¶ 1, 34. In determining whether the forfeited issue was reviewable under the plain error doctrine, the appellate court concluded that, although a clear or obvious error occurred, plain error was not established because the evidence was not closely balanced nor was the error so egregious that it denied defendant a fair sentencing hearing. *Id.* ¶¶ 50, 52, 55, 57. As such, the appellate court affirmed the judgment of the circuit court. *Id.* ¶¶ 1, 59-60. For the following reasons, we affirm the judgment of the appellate court.

¶ 2                                        I. BACKGROUND

¶ 3                                        A. Charges

¶ 4        On October 23, 2018, the State charged defendant, by information, with two counts of home invasion (720 ILCS 5/19-6(a)(2) (West 2018)) (counts I and II), two counts of criminal sexual assault (*id.* § 11-1.20(a)(1)) (counts III and IV), and one count of aggravated domestic battery (*id.* § 12-3.3(a-5)) (count V). Count V alleged that on or about October 21, 2018, defendant, in committing a domestic battery (*id.* § 12-3.2(a)(1)), knowingly strangled Lacey S., a family or household member of defendant. Count V further indicated that, pursuant to sections 5-4.5-35(a), 5-5-3.2(b)(1), and 5-8-2 of the Unified Code of Corrections (Code of Corrections) (730 ILCS 5/5-4.5-35(a), 5-5-3.2(b)(1), 5-8-2 (West 2018)) and pursuant to his conviction in Logan County case No. 14-CF-85, defendant was eligible for extended-term sentencing, which subjected him to a sentencing range of 7 to 14 years' imprisonment, if convicted.

¶ 5                        B. Pretrial Motion to Introduce Other-Crimes Evidence

¶ 6        On April 24, 2019, the State filed a pretrial motion to introduce evidence of defendant's other crimes of domestic violence, pursuant to section 115-7.4 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-7.4 (West 2018)). The State sought to introduce defendant's convictions of aggravated domestic battery of Bianca R. in Logan County case No. 14-CF-85 and domestic battery of Lacey S. in Logan County case No. 15-CF-68. The circuit court granted the State's motion to

introduce the convictions.

¶ 7                                    C. Jury Trial

¶ 8        Defendant's jury trial commenced on July 18, 2022.[1] Bianca R. (Bianca) testified that she had known defendant since 2011. She and defendant were previously engaged and had two children together. Bianca recalled that on August 15, 2014, at approximately 1:30 a.m., she was at home in bed when she received a phone call from defendant. Bianca testified that she hung up on him and went back to sleep. At approximately 2:30 a.m., Bianca was awakened by defendant, who was sitting on top of her, straddling her with his knees, and holding her down with his arms on her shoulders. Bianca attempted to reach for her phone, but defendant pushed her back and said, "It's already gone. Don't look for it."

¶ 9        Bianca indicated that defendant wanted to talk to her about their failed relationship and "figure this out." They went outside to talk because there were three small children sleeping in the house. Once outside, Bianca "looked at him in the eye and told him, 'F*** you.' " Bianca testified that defendant "literally put his arms around my throat into my esophagus, threw me into the table, [and] smashed an ashtray." Bianca testified that, when defendant grabbed her by the throat, he "choked me until I lost consciousness," explaining that "it was black for a minute." Bianca sustained a gash in her tongue, handprints on her throat, scrapes and scratches on her knees and leg, and scratches on her shoulders and arms.

¶ 10       Bianca testified that the attack ended when defendant saw her five-year-old son standing at the door. Bianca's six-month-old baby also woke up and "needed a bottle." Bianca testified that defendant allowed her to make a bottle for the baby, then indicated, "You are going to talk to me." Bianca went to the bedroom and talked to defendant. After defendant calmed down, Bianca went to the living room to get her five-year-old to sleep. Upon returning to the bedroom, Bianca observed that defendant "had passed out." Because Bianca could not locate her phone, she used her Kindle to contact a friend who called the police on her behalf. Defendant

_____

[1]Though testimony relevant to all counts of the information was adduced at trial, defendant was acquitted of counts I through IV and convicted only of count V. Accordingly, we set forth only the testimony corresponding to that conviction as it pertains to the issue before this court.

was arrested and eventually pleaded guilty to aggravated domestic battery of Bianca in Logan County case No. 14-CF-85.

¶ 11		Lacey S. (Lacey) testified that she and defendant began dating in 2015 and, though they have a child together, they never lived together. Their child was six years old at the time of the trial. Lacey testified that on October 21, 2018, she was at home, and defendant was repeatedly sending text messages to her, upset that she was not responding to him, and asking to speak to their child. Defendant continued harassing Lacey, notwithstanding that she asked him several times to leave her alone. Lacey testified that the text messages eventually stopped and approximately 10 or 15 minutes later, she heard "heavy footsteps" in the hallway.

¶ 12		Lacey testified that defendant entered the room, came toward her, and reached for her phone. When she tried to get her phone, defendant grabbed her by her hair and threw her to the floor. Lacey indicated that defendant was accusing her of sleeping with somebody. He climbed on top of her, put his legs over the tops of her arms, and sat on her chest. Lacey testified that defendant held her phone in one hand and grabbed her head with the other hand "and slammed it into the floor a couple of times while he was still accusing me of cheating on him."

¶ 13		Lacey explained that, when defendant had her phone, he saw text messages between her and another man. When defendant asked how long she had been seeing the man, Lacey replied, "[N]ot very long." At that point, defendant grabbed Lacey by the neck and began to strangle her. Lacey testified that defendant applied pressure to her neck, he was squeezing extremely hard, she began to see black spots, she was unable to breathe, and "it felt like my eyes were going to pop out." Defendant continued accusing Lacey and asking her why she was telling everyone that they were no longer together.

¶ 14		Lacey testified that defendant let go, questioned her further, then pushed her down by her neck again and choked her for 15 or 20 seconds. Lacey recalled "seeing a lot of black spots and he told me he wished he could kill me." Lacey reported that she could not breathe but that she never completely blacked out.

¶ 15		Lacey testified that defendant eventually stopped assaulting her and followed her to the bathroom as he continued accusing her of sleeping with the other man. When Lacey attempted to run to the front door, defendant shoved her head into the

door, and she fell to the floor. All the while, defendant was shouting at her and demanding to know why she was seeing somebody else. When Lacey was able to get up, defendant asked her repeatedly if she intended to call the police. Defendant told Lacey that he would leave if she would not call the police and if she would change her phone number. Lacey agreed, and defendant left. Lacey called the police and was transported to the hospital by ambulance. She sustained bruising to her shoulder, marks on both sides of her neck and above her eyebrow, and a laceration on the back of her ear.

¶ 16 Lacey further testified about a separate episode of violence between her and defendant that occurred on April 18, 2015. After she and defendant attended a wedding on that date, they went to a hotel and argued. Lacey left the hotel. Defendant pursued her to the parking lot and shoved her into the door handle of his truck. Defendant was arrested and eventually pleaded guilty to domestic battery of Lacey in Logan County case No. 15-CF-68.

¶ 17 Robert Sherren testified that he is employed by the Lincoln Police Department as a day shift patrol sergeant. Sherren testified that at approximately 3:20 p.m. on October 21, 2018, he was on duty and was dispatched to Lacey's home in response to a reported home invasion. When Sherren arrived, Lacey let him in the front door. Sherren noted a small child was present in the home. Sherren described Lacey as emotionally disturbed, upset, and crying; her face was red, and "you could just tell she was distraught." Sherren observed red marks around Lacey's neck and on her arms. Sherren testified that Lacey was transported to the hospital by ambulance.

¶ 18 Sumesh Jain testified that he is an emergency physician who treated Lacey in the hospital on October 21, 2018. He recalled bruising to both sides of Lacey's neck, as well as injuries to her shoulder and ankle. Jain testified, *inter alia*, that Lacey "had a history and exam consistent with physical assault."

¶ 19 Defendant testified that on October 21, 2018, he was sending text messages to Lacey about their child and Lacey told him to leave her alone. Defendant testified that he went to Lacey's home uninvited and knocked on the door and that Lacey let him in. Defendant and Lacey talked in the kitchen for a while then moved to the living room to watch television. Defendant testified that, when Lacey went to the restroom, he picked up her phone and reviewed her text messages. Defendant discovered that Lacey had been messaging with another man and sending him

photographs of their child. When Lacey returned, defendant confronted her about the messages and an argument ensued. Defendant testified that Lacey slapped him and he grabbed her by her hair, threw her to the floor, "called her a stupid, dirty whore and grabbed her by the neck." Defendant admitted that he squeezed and held Lacey's neck.

¶ 20 The jury convicted defendant of aggravated domestic battery. The circuit court entered a judgment on the verdict on July 21, 2022.

¶ 21                                   D. Sentencing Hearing

¶ 22 A sentencing hearing was conducted on September 16, 2022. The presentence investigation report (PSI) indicated that defendant's criminal history consisted of three felony convictions and three Class A misdemeanor convictions. Relevant here is the felony conviction of aggravated domestic battery of Bianca in Logan County case No. 14-CF-85 and the felony conviction of domestic battery of Lacey in Logan County case No. 15-CF-68. Defendant committed the offense involving Lacey while he was on probation for the offense involving Bianca.

¶ 23 The PSI further indicated that defendant's parents divorced when he was two years old, he was diagnosed with attention deficit hyperactivity disorder when he was approximately four years old, he began smoking marijuana when he was 10 years old, he used several additional substances throughout his teenage years, and he struggled with anxiety and depression most of his life. Defendant described himself as an alcoholic and a cocaine addict. Defendant also submitted several supportive character letters.

¶ 24 Lacey provided a victim impact statement in which she described the incident and indicated, *inter alia*, that her child witnessed the attack and was required to ride to the hospital in the ambulance beside her. Lacey asserted that she was not sure if she would "ever be completely healed" of the "pain, stress, anxiety, and absolute humiliation this attack has caused me to have."

¶ 25 The State indicated that the sentencing range was 3 to 14 years in the Department of Corrections, followed by 4 years of mandatory supervised release. The State acknowledged that probation was an option but argued that a sentence of

probation was inappropriate, considering the facts and circumstances of the case and defendant's violent behaviors and criminal history. Accordingly, the State requested the circuit court to consider statutory factors in aggravation as follows:

> "MR. HAUGE: On the other hand, there are statutory factors in aggravation that do apply, specifically Subsection 1 of the [Code of Corrections], that the defendant's conduct caused or threatened serious harm, and that's not just the physical harm that Lacey suffered, but that's the emotional harm, as well. And you can see that she still carries that with her years and years and years later and will continue to.
>
> Subsection 3, the defendant has a history of prior delinquency or criminal conduct, and he does.
>
> Subsection 7, the sentence is necessary to deter others from committing the same crime. Again, a message needs to be sent that domestic violence towards women, sexual assaults, home invasions, should not be tolerated.
>
> Subsection 12, the defendant was convicted of a felony committed while he was on parole, and that's what we have here, Your Honor. That's a statutory factor in aggravation.
>
> *And Subsection 14, the last section that applies is that the defendant held a position of trust or supervision over another, such as a family or household member, and that's what Lacey is. So there are five statutory factors in aggravation that apply in this case.*" (Emphasis added.)

The State recommended a 13-year prison sentence. Though defendant conceded that a sentence of probation was inappropriate, he recommended a five-year prison sentence.

¶ 26   The circuit court agreed with the parties that probation was inappropriate, given defendant's "long history of an inability to conduct himself in accordance with the provisions of any type of community-based court sentencing that he's been sentenced to in the past." The circuit court explained:

> "[W]hen the defendant doesn't get his way, he's willing to become violent in order to get his way. That seems to be a common theme of all of these incidents;

and for that reason, I think it is necessary to protect the public, as well as these individual victims here; that a Department of Corrections sentence is necessary."

¶ 27 The circuit court emphasized that "[t]his was one of the more violent domestic violence cases this Court has presided over. Obviously, it's inherent in the elements of the offense, aggravated domestic battery, that there is violence, but not every case involves strangulation, and strangulation to the point where the victim was almost passing out."

¶ 28 In considering the statutory factors in mitigation and aggravation, the circuit court concluded that an extended-term sentence was necessary. Regarding the factors in mitigation, the circuit court noted defendant's extensive history of substance abuse and mental health issues, as well as his remorseful attitude.

¶ 29 Regarding the factors in aggravation, the circuit court commented:

"THE COURT: On the other hand, the aggravating factors, you did cause serious harm. You have a history of prior delinquency or criminal activity. The sentence here is necessary to deter others. You are, obviously, not the only person in this state that thinks that they can control women when they don't get their way by violence. We deal with that every day, so we need to deter others by the sentence here today; and, of course, this crime occurred while you were on parole, on mandatory supervised release, *and you were in a position of trust, being the father of [Lacey's] child. So all of those factors apply. All of those point to a higher sentence.* Like I said before, I think an extended term is necessary." (Emphasis added.)

The circuit court sentenced defendant to a 10-year prison term. Defendant filed a *pro se* motion to reconsider the sentence, which the circuit court denied.

¶ 30                                               E. Appellate Court

¶ 31 On appeal, defendant argued that the circuit court erred in imposing the 10-year prison sentence by improperly considering in aggravation (1) an element inherent in the offense and (2) that defendant held a position of trust in relation to the victim. 2023 IL App (4th) 230087-U, ¶¶ 2, 34. Though defendant conceded that he

forfeited these arguments by failing to object at the sentencing hearing and by failing to raise them in his motion to reconsider the sentence, he requested the appellate court to review the arguments under the plain-error doctrine. *Id.* ¶ 34.

¶ 32　　In determining whether a clear or obvious error occurred, the appellate court first addressed defendant's argument regarding the element inherent in the offense. *Id.* ¶ 45. The appellate court found it was not improper for the trial court to consider in aggravation that defendant strangled Lacey until she almost passed out. *Id.* The appellate court explained that the circuit court considered not only that defendant strangled Lacey but that he strangled her to an extent beyond what was necessary to establish that element of the offense. *Id.* The appellate court noted that, pursuant to *People v. Saldivar*, 113 Ill. 2d 256, 269 (1986), a sentencing court may consider the degree of harm caused by a defendant's conduct, even when the harm is inherent in the offense. 2023 IL App (4th) 230087-U, ¶ 45.

¶ 33　　Applied here, the appellate court observed that, although strangulation is inherent in aggravated domestic battery, not every case of strangulation causes the victim to nearly pass out. *Id.* Thus, the appellate court concluded that the sentencing court could suitably consider the greater degree of harm caused by defendant. *Id.* The appellate court referenced Lacey's testimony that defendant squeezed her neck " 'extremely hard' " until she " 'felt like [her] eyes were going to pop out' " and she " 'started to see black spots.' " *Id.* On that basis, the appellate court concluded that it was not error for the circuit court to consider in aggravation that defendant strangled Lacey. *Id.*

¶ 34　　Regarding whether it was error for the circuit court to consider defendant's position of trust in relation to the victim as a sentencing factor in aggravation, the appellate court observed section 5-5-3.2(a) of the Code of Corrections (730 ILCS 5/5-5-3.2(a) (West 2022)), which provides the factors a sentencing court may consider in aggravation, and subsection (a)(14) (*id.* § 5-5-3.2(a)(14)), which provides the aggravating factor of a defendant holding a position of trust or supervision over a victim who is under the age of 18 in the instance of a defendant committing one of several enumerated sex offenses. 2023 IL App (4th) 230087-U, ¶ 48.

¶ 35　　The appellate court noted that, in considering the statutory factors in aggravation, the circuit court noted defendant's " 'position of trust, being the father

of [Lacey's] child.' " *Id.* ¶ 49. The appellate court found that factor was inapplicable here, where defendant was acquitted of the charges of criminal sexual assault and Lacey was not a victim under the age of 18. *Id.* Accordingly, the appellate court concluded that the circuit court erred in considering that factor in aggravation. *Id.*

¶ 36    Having found the circuit court erred, the appellate court next determined whether the error constituted plain error. *Id.* ¶ 52. The appellate court found the first prong of the plain error rule inapplicable, as the evidence was not closely balanced in comparing the evidence of aggravation with the evidence in mitigation. *Id.* ¶ 55. The appellate court further found the second prong of the plain error rule inapplicable, reasoning that defendant failed to explain how the circuit court deprived him of a fair sentencing hearing by considering an improper sentencing factor. *Id.* ¶ 57. The appellate court noted its previous rejection of that argument and likewise rejected it in this case. *Id.* (citing *People v. Johnson*, 2017 IL App (4th) 160920, ¶ 56). As such, the appellate court affirmed the circuit court's judgment. *Id.* ¶ 59.

¶ 37                                  II. ANALYSIS

¶ 38    The issue before this court is whether the forfeited error of the circuit court's consideration of an improper factor in aggravation at sentencing is subject to plain error review under the second prong of the plain error rule. Defendant concedes that he forfeited the issue by failing to raise a contemporaneous objection when the circuit court considered the improper factor at the sentencing hearing and by failing to raise the issue in his motion to reconsider his sentence. See *People v. Williams*, 181 Ill. 2d 297, 322 (1998). However, defendant urges this court to excuse the forfeiture under the plain error rule.

¶ 39                        A. Overview of the Plain Error Rule

¶ 40    A defendant generally forfeits review of the circuit court's consideration of improper evidence at a sentencing hearing if he fails to object at the hearing and fails to raise the issue in a postsentencing motion. See *id.*; see also *People v. Herron*, 215 Ill. 2d 167, 175 (2006) (both objection at trial and raising the issue in written

posttrial motion are required to review errors that could have been raised at trial). This forfeiture rule encourages defendants "to raise issues before the trial court, allowing the court to correct its own errors." *Herron*, 215 Ill. 2d at 175. "This forfeiture rule also prevents criminal defendants from sitting idly by and knowingly allowing an irregular proceeding to go forward only to seek reversal due to the error when the outcome of the proceeding is not favorable." *People v. Jackson*, 2022 IL 127256, ¶ 15.

¶ 41        "The plain error rule is a well-established exception to forfeiture principles, allowing reviewing courts discretion to excuse a defendant's procedural default." *People v. Moon*, 2022 IL 125959, ¶ 19. Illinois Supreme Court Rule 615(a) (eff. Jan. 1, 1967), commonly known as the plain error rule, provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." Before this court adopted Rule 615(a), Illinois courts deemed forfeiture "a harsh sanction for a defendant whose attorney failed to raise an error before the trial court." *Herron*, 215 Ill. 2d at 176. Accordingly, the rule was implemented to ameliorate the harshness of forfeiture. *Jackson*, 2022 IL 127256, ¶ 18.

¶ 42        The plain error rule does not allow reviewing courts to consider all forfeited errors, however. *Herron*, 215 Ill. 2d at 177; see *People v. Precup*, 73 Ill. 2d 7, 16 (1978) (plain error doctrine is not "a general saving clause preserving for review all errors affecting substantial rights whether or not they have been brought to the attention of the trial court"). Rather, "it is a narrow exception to forfeiture principles designed to protect the defendant's rights and the reputation of the judicial process." *Moon*, 2022 IL 125959, ¶ 21.

¶ 43        The plain error rule allows reviewing courts to review a forfeited error if the error falls under one of two alternative prongs:

> "(1) when a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) when a clear or obvious error occurred and the error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *Id.* ¶ 20.

These two prongs are "the standards for Illinois courts to consider in deciding whether to excuse forfeiture." *Jackson*, 2022 IL 127256, ¶ 19. Under both prongs, the burden remains with the defendant to persuade the court to excuse the forfeiture. *Id.*

¶ 44    The first step in the plain error analysis is to determine whether a clear or obvious error occurred. *Moon*, 2022 IL 125959, ¶ 22. Here, in identifying the aggravating factors at sentencing, the circuit court stated that defendant was "in a position of trust, being the father of [Lacey's] child." Defendant maintains that the sentencing court committed a clear or obvious error by considering this as a factor in aggravation. The State responds that a sentencing court "must consider all matters reflecting upon the defendant's personality, propensities, purposes, tendencies, and indeed every aspect of his life relevant to the sentencing proceeding." *People v. Ward*, 113 Ill. 2d 516, 527 (1986). As such, the State maintains that the circuit court properly considered the nature of defendant's relationship with Lacey as the mother of his child as part of the circumstances of the assault. See 730 ILCS 5/5-5-3.1(b) (West 2022) (sentencing court must consider "the nature and circumstances of the offense"). We agree with defendant.

¶ 45    Section 5-5-3.2(a) of the Code of Corrections enumerates the statutory factors a sentencing court may consider in aggravation when imposing a sentence. *Id.* § 5-5-3.2(a). The provision at issue here is subsection (a)(14), which provides that a factor in aggravation exists by virtue of a defendant holding a position of trust or supervision in relation to a victim who is under the age of 18, where the defendant committed one of several sexual offenses. *Id.* § 5-5-3.2(a)(14).

¶ 46    Here, the circuit court stated that defendant was "in a position of trust, being the father of [Lacey's] child." Again, this statement was made in the context of identifying the aggravating factors applicable to this case, and the circuit court explicitly referenced it as a factor it considered in imposing the sentence. Directly after making this statement, the circuit court continued: "So all of those factors apply. All of those point to a higher sentence." Given the clear context in which this statement was made, we reject the State's suggestion that the circuit court uttered the statement to describe the circumstances of the assault (see *id.* § 5-5-3.1(b)).

¶ 47     We further note that the State's own remarks at the sentencing hearing undermine the argument it now makes before this court. At the sentencing hearing, the State set forth the applicable factors in aggravation as follows: "On the other hand, there are statutory factors in aggravation that do apply, specifically" "[s]ubsection 14, the last section that applies is that the defendant held a position of trust or supervision over another, such as a family or household member, and that's what Lacey is. So there are five statutory factors in aggravation that apply in this case."

¶ 48     In sum, the record establishes that the State erroneously advised the circuit court to consider defendant's position of trust in relation to the victim as an applicable aggravating factor and that the circuit court in turn erroneously considered the same as an aggravating factor in imposing the sentence. Defendant's position of trust in relation to the victim was clearly inapplicable here, as defendant was acquitted of all sexual assault charges and Lacey was not a victim under the age of 18. As such, we agree with defendant that the circuit court committed a clear or obvious error by considering defendant's position of trust in relation to the victim as a statutory factor in aggravation in imposing the sentence.

¶ 49     Having found a clear or obvious error occurred, the next step in the plain error analysis turns "on which prong of the plain error rule the defendant has invoked in seeking a review of [the] forfeited error." *Moon*, 2022 IL 125959, ¶ 23. When a defendant seeks review under the first prong, "the reviewing court must determine 'whether the defendant has shown that the evidence was so closely balanced the error alone severely threatened to tip the scales of justice.' " *Id.* (quoting *People v. Sebby*, 2017 IL 119445, ¶ 51). "This first prong of the plain error rule, *i.e.*, the closely balanced evidence prong, 'guards against errors that could lead to the conviction of an innocent person.' " *Id.* (quoting *Herron*, 215 Ill. 2d at 186).

¶ 50     When a defendant seeks review under the second prong, "the reviewing court must determine 'whether the defendant has shown that the error was so serious it affected the fairness of the trial and challenged the integrity of the judicial process.' " *Id.* ¶ 24 (quoting *Sebby*, 2017 IL 119445, ¶ 50). "This second prong of the rule, *i.e.*, the substantial rights prong, 'guards against errors that erode the integrity of the judicial process and undermine the fairness of the defendant's trial.' " *Id.* (quoting *Herron*, 215 Ill. 2d at 186). "Errors that fall within the purview

- 13 -

of the second prong of the plain error rule are 'presumptively prejudicial errors— errors that may not have affected the outcome, but must still be remedied' because the error 'deprive[d] the defendant of a fair trial.' " *Id.* (quoting *Herron*, 215 Ill. 2d at 185).

¶ 51 Here, defendant has invoked only the second prong of the plain error rule, arguing that the circuit court's consideration of the improper factor in aggravation was structural error, requiring a new sentencing hearing regardless of the closeness of the evidence at sentencing or whether the error affected the outcome of the sentence. See *id.* ¶ 27. As such, our analysis focuses solely on the standards governing review under the second prong of the plain error rule. Whether defendant's forfeiture of the circuit court's clear or obvious error of considering the improper factor in aggravation constitutes second prong plain error is a question of law that is reviewed *de novo. Jackson*, 2022 IL 127256, ¶ 25.

¶ 52                              B. Second Prong Plain Error Requires a
                                      Showing of Structural Error

¶ 53 This court recently reviewed the standards governing the second prong of the plain error rule in *Moon*, 2022 IL 125959, ¶¶ 26-30, and *Jackson*, 2022 IL 127256, ¶¶ 26-31. We revisit those standards once again and likewise apply them here. As mentioned above, the plain error rule itself is " 'a narrow and limited exception' to procedural default." *Jackson*, 2022 IL 127256, ¶ 27 (quoting *People v. Downs*, 2015 IL 117934, ¶ 15). Furthermore, errors that are reviewable under the second prong of the plain error rule are rare. *Id.* (citing *People v. Rivera*, 227 Ill. 2d 1, 19-20 (2007)).

¶ 54 Obtaining review under the second prong of the plain error rule is indeed a high hurdle, as the second prong is only implemented " 'in those exceptional circumstances where, despite the absence of objection, application of the rule is necessary to preserve the integrity and reputation of the judicial process.' " *Id.* ¶ 28 (quoting *People v. Herrett*, 137 Ill. 2d 195, 214 (1990)). Applied here, defendant is asking this court to overlook his forfeiture and review the circuit court's error not only under a narrow and limited rule but also under the rarely applied second prong of that narrow and limited rule. See *id.* ¶ 27.

¶ 55    This court has equated second prong plain error with "structural error," which is the type of error that " 'erode[s] the integrity of the judicial process and undermine[s] the fairness of the defendant's trial.' " *Jackson*, 2022 IL 127256, ¶ 28 (quoting *Herron*, 215 Ill. 2d at 186). An error is deemed structural only if it renders the criminal trial—or here, the sentencing hearing—fundamentally unfair. *Moon*, 2022 IL 125959, ¶ 28. Unlike errors reviewed under the first prong of the plain error rule, if structural error occurs, the defendant is not required to show that he was prejudiced by the error. *Jackson*, 2022 IL 127256, ¶ 28. Rather, "prejudice to the defendant is presumed regardless of the strength of the evidence or the effect of the error on the trial outcome." *Moon*, 2022 IL 125959, ¶ 27. This is so because, when the error is of such gravity as to threaten the integrity of the judicial process, courts must correct the error to protect the fairness and reputation of the process. *Id.*

¶ 56    "The United States Supreme Court has explained that '[t]he purpose of the structural error doctrine is to ensure insistence on certain basic, constitutional guarantees that should define the framework of any criminal trial.' " *Jackson*, 2022 IL 127256, ¶ 29 (quoting *Weaver v. Massachusetts*, 582 U.S. 286, 294-95 (2017)). The United States Supreme Court has also explained that structural errors—which are subject to automatic reversal—occur only in a " 'very limited class of cases.' " *Moon*, 2022 IL 125959, ¶ 28 (quoting *Johnson v. United States*, 520 U.S. 461, 468 (1997)).

¶ 57    "The structural errors identified by the Supreme Court include a complete denial of counsel, denial of self-representation at trial, trial before a biased judge, denial of a public trial, racial discrimination in the selection of a grand jury, and a defective reasonable doubt instruction." *Id.* ¶ 29 (citing *Washington v. Recuenco*, 548 U.S. 212, 218 n.2 (2006)). It is axiomatic that structural "errors affect the framework within which the trial proceeds, rather than mere errors in the trial process itself." *Id.* (citing *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991)).

¶ 58    In determining whether an error is structural for purposes of review under the second prong of the plain error rule, this court is not limited to the list of structural errors identified by the United States Supreme Court. *Id.* ¶ 30. Rather, we may deem an error as structural as a matter of Illinois law regardless of the error's status under federal law. *Id.* Yet we look to the structural errors identified by the United

States Supreme Court as comparisons to aid our quest in determining whether the error at hand is likewise structural. *Id.*; see *People v. Averett*, 237 Ill. 2d 1, 13 (2010) ("While the error is serious, it is not comparable to the errors recognized by the Supreme Court as structural.").

¶ 59     In the case at bar, our task, then, is to determine whether the circuit court's error of considering defendant's position of trust in relation to the victim as a factor in aggravation in imposing the sentence constituted structural error, which, again, "is an error of such magnitude that it undermine[d] the framework within which the [sentencing hearing] proceed[ed], rather than a mere error in the [sentencing] process itself (*Fulminante*, 499 U.S. at 310), thereby excusing defendant's forfeiture of the error without him having to show prejudice." *Jackson*, 2022 IL 127256 ¶ 31.

¶ 60                              C. Review of *Martin*

¶ 61     Before examining this issue, we first address the numerous and significant citation errors in defendant's opening brief and petition for leave to appeal. Defendant's arguments are summarized in the heading of the argument section of his opening brief as follows: "Where the consideration of an improper factor in aggravation at sentencing affects a defendant's fundamental right to liberty, the trial court's consideration of improper sentencing factors should be subject to plain error review under the second prong of the plain error rule."

¶ 62     To support this argument, defendant misrepresents this court numerous times by incorrectly providing a purported quote from this court's decision in *People v. Martin*, 119 Ill. 2d 453 (1988), and by mischaracterizing our findings in *Martin*. Twice in his opening brief and twice in his petition for leave to appeal, defendant erroneously asserts that this court held in *Martin* that "[r]eview of whether the circuit court improperly considered a factor in aggravation under the *second prong* of the plain error doctrine is proper, as it affects a fundamental right, defendant's right to liberty." (Emphasis added.) *Martin* contains no such statement. Nor do the words "second prong" even appear in *Martin*, as the issue in that case dealt exclusively with first prong plain error review. See *id.* at 458 (discussing whether the evidence presented at the sentencing hearing was "closely balanced," which is clearly a first prong plain error analysis). Defendant further mischaracterizes

*Martin* in his opening brief and petition for leave to appeal by alleging that, "[i]n *Martin*, this Court found *both prongs* of plain error applicable." (Emphasis added.) This likewise misrepresents this court's holding, as there was no discussion whatsoever of second prong plain error review in *Martin*.[2]  See *id.*

¶ 63        After the State noted the misrepresentation in its appellee brief, defendant explained in his reply brief that the purported quote was not an *exact* quote from *Martin* but that it originated from an opinion of the first appellate district in *People v. Haley*, 2011 IL App (1st) 093585, ¶ 62, in which, according to defendant, the appellate court cited and summarized the findings of *Martin.* Looking again at the subject quote, the *Haley* court provided that "[r]eview of whether the circuit court improperly considered a factor in aggravation under the *second prong* of the plain error doctrine is proper, as it affects a fundamental right, defendant's right to liberty." (Emphasis added.) *Id.* The *Haley* court erroneously cited *Martin* to support this statement. See *id.* To summarize, defendant here mistakenly attributed the statement to *Martin* rather than *Haley*, and the *Haley* court based the statement on a misreading of *Martin.*

¶ 64        In *Martin*, we revisited the fundamentals of the plain error rule and reasserted the well-established principle that, "in the interest of justice, a reviewing court may consider all questions which appear to be plain error or affect substantial rights of a party." (Emphasis and internal quotation marks omitted.) *Martin*, 119 Ill. 2d at 458 (citing Ill. S. Ct. R. 615 (eff. Jan. 1, 1967)). We concluded in *Martin*—strictly within the confines of determining whether an alleged sentencing error was subject to plain error review under the first prong of the plain error rule—that the sentencing court's consideration of an inapplicable sentencing factor in aggravation in that case had "affected the defendant's fundamental right to liberty [citation] and impinged on her right not to be sentenced based on improper factors." *Id.*

¶ 65        Again, *Martin* was limited to our determination that first prong plain error review was warranted. *Id.* The decision in no way suggests that any sentencing error affecting a defendant's right to liberty is automatically subject to second prong plain error review, and we reject defendant's arguments to the contrary. Defendant

---

[2]Defendant concedes this error in his reply brief and indicates in a footnote that "counsel did not intend any confusion."

urges that, although the *Martin* court conducted a first prong analysis, it subsequently "returned to its earlier discussion of second-prong plain error, concluding that the error 'affected substantial rights of the defendant.' " See *Martin*, 119 Ill. 2d at 460. Defendant is incorrect.

¶ 66    This court's comment in *Martin* that the sentencing court's consideration of an inapplicable aggravating factor implicates a defendant's "fundamental right to liberty" (*id.* at 458) correlated to the earlier citation of the plain error rule, not to the second prong of the plain error rule as defendant submits (see *id.* (reviewing court may consider questions appearing to be plain error or affecting substantial rights (citing Ill. S. Ct. R. 615 (eff. Jan. 1, 1967)))). Again, this court made no mention of second prong plain error in *Martin.* As such, the subject comment does not support defendant's mischaracterization of *Martin* as "the clear precedent of this [c]ourt" that consideration of an inapplicable sentencing factor necessarily renders second prong plain error review appropriate because it affects a defendant's "fundamental right to liberty."

¶ 67    Long-standing Illinois precedent further confirms that our statement in *Martin* may not be construed to implicate automatic review under the second prong of the plain error rule as defendant suggests. See *Precup*, 73 Ill. 2d at 16 (plain error doctrine is not "a general saving clause preserving for review all errors affecting substantial rights"). Indeed, establishing that a forfeited error affected a substantial right does not grant automatic plain error review but merely satisfies the prerequisite that the error must affect a substantial right before plain error review is even considered. See *Herron*, 215 Ill. 2d at 185; see also *People v. Keene*, 169 Ill. 2d 1, 16-17 (1995); *Precup*, 73 Ill. 2d at 17 ("Before plain error can be considered as a means of circumventing the general waiver rule, it must be plainly apparent from the record that an error affecting substantial rights was committed."). Once it is determined that the error affected a substantial right, the reviewing court may then proceed in determining whether the error is excusable under the plain error rule. See *Herron*, 215 Ill. 2d at 185.

¶ 68    Our analysis in *Martin* conforms with precedent, as we first observed that the defendant's substantial right to liberty was affected by the sentencing court's consideration of the improper sentencing factor and subsequently determined that first prong plain error review was appropriate and conducted that analysis. See

*Martin*, 119 Ill. 2d at 458. Given the post-*Martin* confusion that has evolved among the appellate districts, we clarify that our holding in *Martin* may not be extended to allow automatic review under the second prong of the plain error rule when the sentencing court considers an improper sentencing factor—which affects the substantial right to liberty.

¶ 69    For the stated reasons, the first appellate district in *Haley* misread *Martin* in stating that "[r]eview of whether the circuit court improperly considered a factor in aggravation under the second prong of the plain error doctrine is proper, as it affects a fundamental right, defendant's right to liberty." *Haley*, 2011 IL App (1st) 093585, ¶ 62 (citing *Martin*, 119 Ill. 2d at 458). To that extent, we overrule *Haley*.

¶ 70    Besides *Haley*, defendant cites several post-*Martin* decisions by the first, second, third, and fifth appellate districts, which defendant alleges "have held that a circuit court's improper consideration of a factor in aggravation can be reviewed under the second prong of the plain error doctrine because it affects the defendant's fundamental right to liberty." Defendant sets forth a list of these decisions and alleges that "all of the cases mentioned above rely on this Court's decision in *Martin* as support for the notion that the consideration of improper sentencing factors constitutes second-prong plain error" and "stand in direct conflict with the *** decision in this case." We examine each of these decisions in turn.

¶ 71    Defendant cites *People v. Whitney*, 297 Ill. App. 3d 965, 969 (1998), in which the first appellate district aptly quoted *Martin* for the proposition that a defendant has the right to not be sentenced based on improper sentencing factors, which impinges on the defendant's fundamental right to liberty. The *Whitney* court then concluded that "we may consider defendant's argument on this point under the doctrine of plain error, despite his failure to raise the issue *** in a written postsentencing motion." *Id.* The *Whitney* court concluded that the forfeited error was reviewable under the first prong of the plain error rule as it was in *Martin.* See *id.* at 969, 971. Because *Whitney* appropriately applied *Martin* in the context of a first prong plain error analysis, defendant's reliance on *Whitney* to support his second prong argument is unfounded. See *id.* at 971 (where the appellate court considered the weight of the evidence supporting the sentence).

¶ 72    Defendant also cites *People v. Abdelhadi*, 2012 IL App (2d) 111053, ¶ 7, in which the second appellate district indicated that the second prong of the plain error

- 19 -

rule was "potentially present here, because when a trial court considers erroneous aggravating factors in determining the appropriate sentence of imprisonment, the defendant's 'fundamental right to liberty' is unjustly affected, which is seen as a serious error" (citing *People v. James*, 255 Ill. App. 3d 516, 531 (1993)).

¶ 73       The *Abdelhadi* court did not cite *Martin* but cited *James.* See *id.* In *James*, the first appellate district cited *Martin* in observing the sentencing court's error of considering an improper factor in aggravation, which affected the defendant's fundamental right to liberty and the right to not be sentenced based on improper factors. *James*, 255 Ill. App. 3d at 531 (citing *Martin*, 119 Ill. 2d at 458). The *James* court proceeded in determining the weight the sentencing court placed on the improper factor under the first prong of the plain error rule. *Id.* at 531-33. Accordingly, the *James* court's reliance on *Martin* was proper. Though the *James* court properly cited *Martin*, the *Abdelhadi* court cited *James* but erred by implementing the second prong of the plain error rule, as neither *James*—nor *Martin*, on which *James* relied—was a second prong plain error case. To that extent, we overrule *Abdelhadi.*

¶ 74       Defendant next cites *People v. Pierce*, 223 Ill. App. 3d 423, 442 (1991), in which the second appellate district cited *Martin* to support its first prong plain error analysis in determining the weight the sentencing court placed on an improper aggravating factor. Though we find *Pierce* inapplicable to the instant case because it did not invoke second prong plain error review, we note the decision mischaracterizes *Martin.*

¶ 75       *Pierce* initially cited *Martin*, stating that "we may review a court's reliance on an improper factor in aggravation in sentencing because it *affects the defendant's fundamental right to liberty and, thus, amounts to plain error.*" (Emphasis added.) *Id.* at 441 (citing *Martin*, 119 Ill. 2d at 458). This misreads *Martin.*

¶ 76       Although we stated in *Martin* that the sentencing court's consideration of an inapplicable sentencing factor in aggravation "affected the defendant's fundamental right to liberty [citation] and impinged on her right not to be sentenced based on improper factors," we *subsequently* determined that first prong plain error review was appropriate because the evidence was closely balanced. *Martin*, 119 Ill. 2d at 458; see *Keene*, 169 Ill. 2d at 16-17; *Precup*, 73 Ill. 2d at 17 ("*Before* plain error can be considered as a means of circumventing the general waiver rule, it must

be plainly apparent from the record that an error affecting substantial rights was committed." (Emphasis added.)). Accordingly, *Martin* did not establish that the consideration of an improper sentencing factor automatically constitutes plain error by virtue of it affecting a substantial right to liberty as *Pierce* indicates. See *Pierce*, 223 Ill. App. 3d at 441.

¶ 77    The *Pierce* court subsequently cited *Martin* and made a similar erroneous statement that "[w]e consider this issue even in the absence of proper preservation because an error in sentencing can *affect defendant's fundamental right to liberty and thus amount to plain error.*" (Emphasis added.) *Id.* at 443 (citing *Martin*, 119 Ill. 2d at 458). In sum, *Pierce* does not implicate the second prong of the plain error rule and is thus inapplicable to this case. However, we overrule *Pierce* to the extent of its mischaracterization of *Martin* by suggesting that consideration of an improper sentencing factor automatically constitutes plain error.

¶ 78    Defendant next cites *People v. Sanders*, 2016 IL App (3d) 130511, ¶ 17, in which the third appellate district explicitly misread *Martin*, purporting that this court "found that *both prongs* of the plain error doctrine applied to this issue." (Emphasis added.) *Id.* (citing *Martin*, 119 Ill. 2d at 458-60). The *Sanders* court continued, alleging that

> "*[r]egarding the second prong*, the supreme court noted that:

> '[t]he trial judge's consideration of the fact that the defendant's conduct caused serious harm to [the victim], resulting in his death, as a factor in aggravation in sentencing clearly affected the defendant's fundamental right to liberty [citation] and impinged on her right not to be sentenced based on improper factors [citation].' " (Emphasis added.) *Id.* (quoting *Martin*, 119 Ill. 2d at 458).

¶ 79    The *Sanders* court concluded:

> "[T]he *Martin* rationale controls the outcome of this case. Specifically, the trial court's express finding that the defendant's conduct caused or threatened serious harm, a factor inherent in the offense of first degree murder, impinged on the defendant's right not to be sentenced based on an improper factor and affected his fundamental right to liberty. [Citation.] Therefore, we reverse the

defendant's sentence under the *second prong* of the plain error analysis, and we remand the cause for resentencing." (Emphasis added.) *Id.* (citing *Martin*, 119 Ill. 2d at 458).

To reiterate, *Martin* does not implicate the second prong of the plain error rule. Accordingly, we overrule *Sanders*'s mischaracterization of *Martin.*

¶ 80    Defendant also cites *People v. Young*, 2022 IL App (3d) 190015, ¶ 23, in which the defendant in that case argued that the error of relying on an improper sentencing factor "is reversible under the *second prong* of the plain error doctrine." (Emphasis added.) After finding that clear error occurred, the third appellate district aptly noted that " '[r]eliance on an improper sentencing factor is *amenable* to plain-error review because such reliance impinges upon defendant's fundamental right to liberty.' " (Emphasis added and internal quotation marks omitted.) *Id.* (quoting *People v. Maggio*, 2017 IL App (4th) 150287, ¶ 50).

¶ 81    However, the *Young* court erred in agreeing with the defendant there that the second prong of the plain error rule applied. See *id.* ¶ 21. Notwithstanding its implicating the second prong of the plain error rule, the *Young* court cited *Martin* and conducted its analysis based on whether "the improper factor was so insignificant that its consideration did not result in a greater sentence," which we emphasize is a first prong plain error analysis. *Id.* ¶ 23 (citing *Martin*, 119 Ill. 2d at 458). We overrule *Young* to the extent that it cited *Martin* to justify a second prong plain error analysis in the context of the sentencing court's consideration of an improper aggravating sentencing factor, then followed up with a first prong plain error analysis.

¶ 82    Defendant next cites *People v. Joe*, 207 Ill. App. 3d 1079, 1085 (1991) (citing *Martin*, 119 Ill. 2d at 458), in which the fifth appellate district cited *Martin* to support its statement that considering an improper aggravating factor affects the defendant's fundamental right to liberty. Because *Joe* did not misread *Martin* and was not a second prong plain error case, it is inapplicable to defendant's argument.

¶ 83    Finally, defendant cites *People v. Dempsey*, 242 Ill. App. 3d 568, 597-98 (1993), in which the fifth appellate district maintained its previous conclusion in *Joe*, 207 Ill. App. 3d 1079. Like *Joe*, *Dempsey* is also inapplicable here, as the issue there did not invoke the second prong of the plain error rule, nor did the *Dempsey*

court cite *Martin*.

¶ 84                    D. Structural Error Analysis

¶ 85    Having addressed the mischaracterizations of *Martin* by defendant and the post-*Martin* errors among the appellate districts, we now proceed with our task of determining whether the circuit court's error of considering defendant's position of trust in relation to the victim as a factor in aggravation in imposing the sentence constituted structural error, which, again, "is an error of such magnitude that it undermine[d] the framework within which the [sentencing hearing] proceed[ed], rather than a mere error in the [sentencing] process itself (*Fulminante*, 499 U.S. at 310), thereby excusing defendant's forfeiture of the error without him having to show prejudice." *Jackson*, 2022 IL 127256 ¶ 31.

¶ 86    As established, defendant cites no viable authority to support his argument that the circuit court's error of considering the improper factor in aggravation is subject to second prong plain error review solely by virtue of the error having affected defendant's fundamental right to liberty.

¶ 87    Defendant alleges that the appellate court here "continuously rejects" the rule "that the consideration of an improper sentencing factor affects a person's fundamental right to liberty." We disagree. The appellate court by no means rejected that principle but, rather, refused to conclude "that a sentencing court's consideration of an improper sentencing factor, by itself, necessarily constitutes second-prong plain error." 2023 IL App (4th) 230087-U, ¶ 57. We agree with the appellate court.

¶ 88    Defendant correctly asserts that "the right to be sentenced lawfully is substantial because it affects a defendant's fundamental right to liberty." See *Martin*, 119 Ill. 2d at 458. However, the bulk of defendant's second prong argument is spent discussing his mischaracterization of *Martin* and the appellate court decisions that we determined are not applicable to defendant's argument in this case.

¶ 89    Again, structural errors affect the very framework within which the sentencing hearing proceeds, rather than mere errors in the sentencing process itself. See *Moon*, 2022 IL 125959, ¶ 29. Because a sentencing court is required to weigh all the

evidence and factors in aggravation and mitigation to determine a defendant's culpability in imposing the sentence (see 730 ILCS 5/5-4-1 (West 2018)), a structural error at sentencing is an error that renders the sentencing hearing itself an unreliable means of implementing that balance.

¶ 90    Here, the circuit court's error of considering the improper factor in aggravation does not satisfy that standard because it did not affect the framework within which the sentencing hearing proceeded but was a mere error in the sentencing process itself. See *Moon*, 2022 IL 125959, ¶ 29. Nor did the error undermine the integrity of the judicial process or render the sentencing hearing fundamentally unfair. See *id.* ¶¶ 24, 28. Nor is the error comparable to the errors deemed structural by the United States Supreme Court. See *id.* ¶ 29.

¶ 91    Moreover, as we noted in *Jackson*, "second-prong plain error can be invoked only for structural errors that are not subject to harmless error analysis." *Jackson*, 2022 IL 127256, ¶ 49; see *People v. Logan*, 2024 IL 129054, ¶ 80 ("An error that is amenable to harmless error analysis is not a structural error."). In contrast, "errors reviewable under the first prong of the plain error rule are the type of errors that are subject to harmless error analysis, and a defendant must establish prejudice resulting from the error to excuse his forfeiture of such an error." *Jackson*, 2022 IL 127256, ¶ 23. "We have previously found that the admission of improper aggravation evidence during a sentencing proceeding is subject to harmless-error analysis and reversal is not mandated in every instance." *People v. Banks*, 237 Ill. 2d 154, 197 (2010); see *People v. Bourke*, 96 Ill. 2d 327, 332-33 (1983) (reviewing claim that sentencing court considered improper sentencing factor for harmlessness).

¶ 92    Applied here, because the sentencing court's error of considering the inapplicable aggravating factor is amenable to harmless error analysis, it follows that it is not a structural error and may not be reviewed under the second prong of the plain error rule, but it is reviewable under the first prong of plain error analysis. See *Jackson*, 2022 IL 127256, ¶ 49.

¶ 93    Finally, defendant's claim that the consideration of the improper factor in aggravation is subject to second prong plain error review is undermined by his own arguments, which implicate the first prong of the plain error rule rather than the second prong. Defendant urges that the appellate court "never addressed whether

the weight placed on the improper sentencing factor was significant because it refused to review the argument as plain error" and "the record on appeal is sufficient for this Court to determine that the weight placed on the improper sentencing factor was not insignificant." He further argues that, because the circuit court explicitly mentioned the improper factor, it cannot be presumed that the factor "did not play a role in the sentence" or "that the weight placed on the improper factor was insignificant."

¶ 94        These arguments illustrate why the sentencing error was not structural error and thus not subject to second prong plain error review because "the concern under the second prong of the plain error rule is addressing unpreserved errors that undermine the integrity and reputation of the judicial process regardless of the strength of the evidence or the effect of the error on the trial outcome." *Id.* ¶ 24. Defendant's arguments that the error affected the outcome of the sentencing due to the closeness of the evidence correspond to a first prong plain error analysis, under which a forfeited error may be reviewed if the evidence was so closely balanced that the error, no matter how seemingly inconsequential, was prejudicial. See *id.* ¶ 23; *Moon*, 2022 IL 125959, ¶¶ 20, 23. Here, defendant's issue correlates solely to the second prong of the plain error rule. He has not invoked first prong plain error in this appeal.

¶ 95                                III. CONCLUSION

¶ 96        For the foregoing reasons, we conclude that the forfeited error of the sentencing court's consideration of the improper factor in aggravation in imposing the sentence is not subject to review under the second prong of the plain error rule but is subject to first prong plain error analysis. Accordingly, we affirm the judgment of the appellate court, which affirmed the judgment of the circuit court.

¶ 97        Judgments affirmed.