NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 250042-U

NO. 4-25-0042

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 21, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Stephenson County |
| MARY K. MAHNKE, | ) | No. 23CM221 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | James M. Hauser, |
| | ) | Judge Presiding. |

JUSTICE LANNERD delivered the judgment of the court.
Presiding Justice Steigmann and Justice Doherty concurred in the judgment.

**ORDER**

¶ 1   *Held*: The appellate court affirmed where defendant forfeited her claim challenging the trial court's award of restitution and failed to establish (1) the award constituted plain error and (2) defense counsel was ineffective for failing to file a timely postsentencing motion challenging the restitution order.

¶ 2   On October 29, 2024, defendant, Mary K. Mahnke, was convicted of cruel treatment of animals—her dogs—under section 3.01(a) of the Humane Care for Animals Act (Act) (510 ILCS 70/3.01(a), (d) (West 2022)) (a Class A misdemeanor) and failure to properly dispose of dead animals under section 17(a) of the Animal Mortality Act (225 ILCS 610/17(a), 19 (West 2022)) (a Class C misdemeanor). On December 17, 2024, the trial court sentenced defendant to, *inter alia*, two years of court supervision, and ordered her to pay $15,378.16 in restitution for care provided for her dogs by the Freeport Animal Hospital (Hospital). Defendant did not file a timely motion challenging the sentence. On appeal, she acknowledges her forfeiture but argues, because

the court lacked evidence the Hospital could properly receive restitution under section 5-5-6 of the Unified Code of Corrections (Unified Code) (730 ILCS 5/5-5-6 (West 2024)), the court committed plain error in making the award. Alternatively, she argues defense counsel was ineffective for failing to challenge the restitution award in a timely posttrial motion. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4            On June 8, 2023, the State charged defendant with cruel treatment of animals (510 ILCS 70/3.01(a) (West 2022)) and failure to properly dispose of dead animals (225 ILCS 610/17(a) (West 2022)).

¶ 5            Defendant's case proceeded to bench trial on October 29, 2024. The State presented testimony showing, in the early evening of May 14, 2023, a fire occurred in defendant's home in rural Stephenson County. Defendant told an emergency responder she had 25 dogs living on the property, and the remains of approximately 20 more dogs were also present. Kristin Laue, the warden and administrator of Stephenson County Animal Control (Animal Control), arrived to take custody of the dogs. She took 20 dogs to the Hospital for care. Most of them had to be shaved because they had severely matted coats.

¶ 6            Laue had worked at the Hospital since she was 18. She originally worked "as reception" and had helped with the animals. At the time of trial, as well as being the Animal Control warden and administrator, she was "on kennel staff [at the Hospital] on the weekends," cleaning the dog and cat cages and providing the animals with medication.

¶ 7            Dr. William Condie testified he was the "county veterinarian," but he also owned the Hospital, where his private practice was located. He agreed with the State, in his role with Animal Control, he "assist[ed] with county cases and assist[ed] Warden Laue." He added, "And then we also board stray and confiscated dogs at our office." He noted he also worked with the

City of Freeport, Illinois, to evaluate dogs from the Freeport pound, but he did not board dogs for Freeport.

¶ 8        Condie testified he had "a few" of defendant's dogs at his office. More of them were at Rockford Career College, which had a program to train veterinary technicians. Condie agreed all the dogs were "in the care of the County" and had been so "for a little over a year." Condie testified the dogs had not been starved. According to Condie, the dogs primarily suffered from insufficient grooming. They also had not received regular veterinary care or their required rabies vaccines. No record existed of whether they had received other standard vaccinations. When asked whether he had provided any other treatment to the dogs besides shaving and grooming, Condie responded he had also provided deworming.

¶ 9        Condie was not the sole veterinarian, nor was the Hospital the sole entity that provided care for the confiscated dogs. Dr. Laura Sweet was head of the veterinary technician program at Rockford Career College, which, as part of its students' training, provided free care to animals held by Animal Control. The program vaccinated the confiscated dogs and gave them heartworm tests. Dr. Crystal Ruter, associated with "Paws & Claws," also provided care. Further, some confiscated dogs were placed in foster homes.

¶ 10        The trial court found defendant guilty on both counts. It stated defendant had not starved the dogs, but her severe failure to groom them amounted to cruelty.

¶ 11        On December 17, 2024, the trial court conducted defendant's sentencing hearing. At the hearing, the State and defendant agreed supervision was an appropriate disposition for her case. The primary contested issue was the amount of restitution. The State requested restitution of $140,276.66, to be split between the Hospital and Animal Control. We note defense counsel did not object to the requested restitution on the basis the Hospital was a private business that Animal

Control hired to perform services for which it was responsible. Instead, defense counsel's argument focused solely on the amount of restitution. Counsel argued the amount was so high her client, who received only Social Security income, would never be able to pay back the full amount.

¶ 12 The trial court asked the State, "So, *** the County has reimbursed all of these businesses or individuals that provided the care and boarding for these animals, correct?" The State responded, "I would believe so." When the court later asked the State if the Hospital had an "outstanding invoice *** of $215,000 and plus," the State agreed.

¶ 13 The trial court admitted a report prepared by Laue. It consisted of eight invoices from Animal Control totaling $140,276.66 and a cover page. The cover page attributed $15,378.16 of this total to the Hospital and $124,898.50 to Animal Control. Nothing in the invoices indicated which services and expenses were attributable to Animal Control and which to the Hospital.

¶ 14 The trial court noted defendant, a 70-year-old whose sole income source was Social Security, would never be able to pay $140,276.66 in restitution. Based on this, the court ordered restitution of $15,378.16 "to cover the [Hospital]." It ordered defendant to make payments of $50 per month while suggesting the money would go to Condie. It further sentenced defendant to two years' supervision.

¶ 15 On January 16, 2025, defendant filed both a notice of appeal and a "Motion *** for Judgment Notwithstanding the Verdict or, in the Alternative, for a New Trial." In the motion, she claimed the evidence was insufficient to prove her guilty of cruelty to animals and failure to properly dispose of deceased animals. On April 3, 2025, defendant filed an "Amended Motion *** for Judgment Notwithstanding the Verdict or, in the Alternative, for a New Trial." The amended motion was essentially identical to the original motion, except it included an assertion defendant was indigent and could not afford to pay the ordered restitution.

¶ 16        This appeal followed.

¶ 17                              II. ANALYSIS

¶ 18        Defendant concedes she forfeited the issue raised on appeal but argues, as a matter of second-prong plain error, the trial court erred in awarding restitution to the Hospital because no evidence was presented to demonstrate it was a victim entitled to restitution pursuant to section 5-5-6 of the Unified Code (730 ILCS 5/5-5-6 (West 2024)). Alternatively, she argues defense counsel was ineffective because she failed to raise the propriety of the restitution award in a posttrial motion.

¶ 19        In response, the State asserts, "Just because Dr. Condie works with *** Animal Control does not mean that services he rendered at his private practice are therefore government services that are not subject to recoupment through restitution." "The cost of services the [Hospital] provided were not rooted in routine government functions, and therefore, it is a 'victim' entitled to restitution."

¶ 20                              A. Jurisdiction

¶ 21        As an initial matter, we note defendant and the State ask us to find we have jurisdiction despite defendant's simultaneous filing of a notice of appeal and a posttrial motion. For the following reasons, we find the simultaneous filing of defendant's posttrial motion with her notice of appeal does not affect our jurisdiction to hear the appeal.

¶ 22        To be timely, a notice of appeal must be filed "within 30 days after the entry of the final judgment appealed from or if a motion directed against the judgment is *timely* filed, within 30 days *after* the entry of the order disposing of the motion." (Emphases added.) Ill. S. Ct. R. 606(b) (eff. Apr. 15, 2024). In other words, a notice of appeal is premature if a timely filed motion directed against the judgment is pending. A *posttrial* motion is a timely motion directed against

the judgment for purposes of Rule 606(b)—and thus delays the time in which the defendant can file their notice of appeal—if it is filed in compliance with the deadline in section 116-1(b) of the Code of Criminal Procedure of 1963 (725 ILCS 5/116-1 (West 2024)). *People v. Willoughby*, 362 Ill. App. 3d 480, 482 (2005); see *People v. Salem*, 2016 IL 118693, ¶ 14 (stating the same principle in more general terms). Under section 166-1(b), a defendant must file any posttrial motion within 30 days of the verdict or finding of guilt. 725 ILCS 5/116-1(b) (2024).

¶ 23    Here, the trial court found defendant guilty on October 29, 2024, but defendant did not file her posttrial motion until January 16, 2025, long after the 30-day deadline for filing such a motion had passed. Thus, the posttrial motion did not make the notice of appeal filed on January 16, 2025, premature. Furthermore, the April 3, 2025, "Amended Motion *** for Judgment Notwithstanding the Verdict or, in the Alternative, for a New Trial" would be untimely as a posttrial motion because, like the original motion, it was filed more than 30 days after the finding of guilt. Moreover, even if we were to choose to treat the amended motion as a postsentencing motion, it would be untimely because it was filed more than 30 days after the December 17, 2024, imposition of sentence. See Ill. S. Ct. R. 606(b) (eff. Apr. 15, 2024); *People v. Vara*, 2018 IL 121823, ¶ 14 (stating the sentence is the final judgment in a criminal case).

¶ 24                              B. Plain Error

¶ 25    Defendant acknowledges her restitution sentencing claim was not preserved but urges us to consider it under the second prong of the plain-error doctrine.

¶ 26    "It is well settled that, to preserve a claim of sentencing error, both a contemporaneous objection and a written postsentencing motion raising the issue are required." *People v. Hillier*, 237 Ill. 2d 539, 544 (2010). However, under the plain-error doctrine, a reviewing court may address a forfeited claim of sentencing error when a "clear or obvious error" occurred

and "(1) the evidence at the sentencing hearing was closely balanced [(first-prong plain error)], or (2) the error was so egregious as to deny the defendant a fair sentencing hearing [(second-prong plain error)]." *Id.* at 545. "Without reversible error, there can be no plain error." *People v. Jackson*, 2020 IL 124112, ¶ 88. The defendant bears the burden of persuasion in establishing plain error. *Hillier*, 237 Ill. 2d at 545.

¶ 27        Our supreme court "equate[s] second prong plain error with 'structural error.' " *People v. Johnson*, 2024 IL 130191, ¶ 55.

> "An error is deemed structural only if it renders the criminal trial—or *** the sentencing hearing—fundamentally unfair. [Citation.] Unlike errors reviewed under the first prong of the plain error rule, if structural error occurs, the defendant is not required to show that he was prejudiced by the error. [Citation.] *** This is so because, when the error is of such gravity as to threaten the integrity of the judicial process, courts must correct the error to protect the fairness and reputation of the process." *Id.*

Consequently, a sentencing error is structural error (and therefore second-prong plain error) only if it affects the sentencing process at a level so fundamental as to make harmless error analysis impossible. See *id.* ¶¶ 91-92 ("[B]ecause the sentencing court's error of considering the inapplicable aggravating factor is amenable to harmless error analysis, it follows that it is not a structural error and may not be reviewed under the second prong of the plain error rule."). Based on the reasoning just described, the *Johnson* court reversed a line of appellate court cases (*id.* ¶¶ 64-81) to hold, although the defendant established that a sentencing error affected a substantial right (*id.* ¶ 88), nevertheless, because he failed to demonstrate the presence of structural error, he had necessarily failed to demonstrate the existence of second-prong plain error (*id.* ¶ 85). The

*Johnson* court held, for defendants to establish structural error at sentencing, and thus second-prong plain error, they must show how the error comports with the structural error analysis the court has developed in its prior decisions, most notably *People v. Moon*, 2022 IL 125959. *Johnson*, 2024 IL 130191, ¶ 90.

¶ 28 Defendant argues it was plain error for the trial court to award restitution to the Hospital because "restitution cannot *** pay for costs incurred for government performing its services." She contends, "[R]estitution will not lie where the state seeks simply to recoup funds expended while performing its official duties." She asserts this principle applies here because the restitution award was for "the county veterinarian's invoice." She argues no evidence was presented to show the "Hospital was a separate entity that incurred costs above and beyond the county's governmental functions." To support her argument, defendant relies on cases holding it is improper for a trial court to award restitution under section 5-5-6 of the Unified Code to government agencies for expenditures that are part of their regular duties.

¶ 29 Nothing in defendant's claim of error precludes harmless error review. Therefore, her claim is not reviewable as second-prong plain error.

¶ 30 Further, defendant has not established a clear or obvious error. Defendant presumes the trial court imposed restitution under section 5-5-6 of the Unified Code (730 ILCS 5/5-5-6 (West 2024)), but we find nothing in the record to support this contention. The award of restitution in this case is more consistent with an award of restitution under section 3.06(a) of the Act (510 ILCS 70/3.06(a) (West 2024)) than under section 5-5-6 of the Unified Code.

¶ 31 Section 3.06(a) of the Act provides for restitution to an "impounding facility for boarding and treating the animals [confiscated pursuant to the Act]" for "outstanding costs incurred *** pending the disposition of the case" when the defendant is convicted of an offense under the

Act. *Id.* Accordingly, because the Animal Hospital cared for the dogs confiscated by Stephenson County pending the defendant's trial for offenses under the Act, it was entitled to receive restitution for the cost of the dogs' care under section 3.06(a). Moreover, even if the Animal Hospital was determined to be acting at the direction of, or on behalf of, Stephenson County, it would constitute a "treating facility" as defined in the Act and thus entitled to restitution under section 3.06(a). *Id.*

¶ 32        While we are not citing *People v. Adcock*, 2014 IL App (2d) 130003-U as precedent because of the limitations contained in Illinois Supreme Court Rule 23(e)(1) (eff. June 3, 2025), we would be remiss if we did not note that case involved the same trial judge as the present case. This increases the likelihood the trial court here imposed restitution under section 3.06(a) of the Act, not section 5-5-6 of the Unified Code. The court was aware section 3.06(a) provides for restitution to certain facilities from those convicted of offenses under the Act. Further, the court was aware an award it made under section 3.06(a), which was similar to the award it made here, was upheld on appeal.

¶ 33                            C. Ineffective Assistance of Counsel

¶ 34        Alternatively, defendant argues defense counsel was ineffective for failing to challenge the restitution award in a timely posttrial motion.

¶ 35        Under the standard established in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), to establish the ineffectiveness of counsel, a defendant must show:

> "(1) the attorney's performance fell below an objective standard of reasonableness and (2) the attorney's deficient performance prejudiced the defendant in that, absent counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different. [Citation.] Because the defendant must satisfy both prongs of this test, the failure to establish either is fatal to the claim."

*People v. Jackson*, 2020 IL 124112, ¶ 90.

¶ 36      We review *de novo* a claim of ineffective assistance of counsel when a defendant raises it for the first time on appeal. *People v. Hibbler*, 2019 IL App (4th) 160897, ¶ 88.

¶ 37      Here, defendant's ineffective assistance claim fails because she cannot establish prejudice. Defendant argues restitution awards to government agencies are improper. However, she has not established the Hospital was a government agency. In contrast, the evidence strongly suggests it was a private business.

¶ 38      Condie testified he owned the Hospital and ran his private practice from it, thus implying the Hospital was a private business. Although Condie testified the Hospital boarded and provided care to dogs from Animal Control, this does not suggest the Hospital was part of Animal Control. Private businesses routinely provide services to government agencies. Here, Condie testified to services the Hospital provided to both Animal Control and the City of Freeport. That testimony allows a strong inference that a portion of the Hospital's business was providing services to these government bodies.

¶ 39      Defendant suggests *the Hospital* provided services to Animal Control as part of *Condie's* role as "county veterinarian." This suggestion would make sense only if the role of "county veterinarian" is not a position within Animal Control but a service for which Animal Control contracts. (We note "county veterinarian" is a title *formerly* found in the Illinois Diseased Animals Act (see Ill. Rev. Stat. 1977, ch. 8, § 187a).) Condie's use of the term thus does not explain his relationship to Animal Control.) Animal Control could not hire the Hospital as an employee; as Laue testified, the Hospital is a business with its own employees, including Laue herself as a weekend kennel worker. Thus, again, the evidence strongly indicates the Hospital provided

services to Animal Control, not that Animal Control had contracted away its duties to a third party in a particular area.

¶ 40        Given this evidence, the inclusion of a restitution argument in her motion based on the premise the Hospital was a government agency would not have had a reasonable probability of causing the trial court to vacate or reduce the award. Thus, defendant has failed to show she was prejudiced by counsel's failure to include it, and her claim of ineffective assistance of counsel is therefore necessarily insufficient (see *Jackson*, 2020 IL 124112, ¶ 90).

¶ 41        Further, as we discussed (*supra* ¶¶ 30-32), it is likely the trial court made the award of restitution to the Animal Hospital under section 3.06 of the Act. Defendant's failure to address the propriety of restitution under section 3.06 is a further reason to conclude no "reasonable probability [existed] that the result of the proceeding would have been different" (*Jackson*, 2020 IL 124112, ¶ 90) had counsel made an argument challenging the propriety of the restitution under section 5-5-6 of the Unified Code. This is a further basis for concluding defendant was not prejudiced by counsel's failure to file an effective postsentencing motion.

¶ 42                          III. CONCLUSION

¶ 43        For the reasons stated, we affirm the trial court's judgment.

¶ 44        Affirmed.