2026 IL App (4th) 250581

NO. 4-25-0581

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 23, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Winnebago County |
| CHARLES JONES, | ) | No. 19CF252 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Brendan A. Maher, |
| | ) | Judge Presiding. |

JUSTICE GRISCHOW delivered the judgment of the court, with opinion.
Justices Zenoff and Vancil concurred in the judgment and opinion.

**OPINION**

¶ 1    Following a trial, a Winnebago County jury found defendant, Charles Jones,

guilty of eight counts of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1)

(West 2016)). The trial court sentenced defendant to a cumulative sentence of 48 years in prison.

Defendant appeals, contending the court erred in admitting hearsay testimony by the victim

regarding uncharged allegations and his trial counsel provided ineffective assistance of counsel

by failing to raise some issues to impeach the victim's credibility. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3    Defendant was charged with eight counts of predatory criminal sexual assault of a

child (*id.*). All eight counts alleged defendant was over the age of 17 and involved the same

victim, L.H., a child under the age of 13 (born in 2011). The indictment alleged that, between

April 12, 2017, and April 11, 2018, defendant put his penis in L.H.'s vagina (count I) and mouth

(count II); between April 12, 2018, and November 14, 2018, defendant put his penis in L.H.'s vagina (count III) and mouth (count IV); between April 12, 2017, and November 14, 2018, defendant put his mouth (count V) and hand (count VI) on L.H.'s vagina; and between April 12, 2017, and November 14, 2018, defendant put his mouth (count VII) and hand (count VIII) on L.H.'s anus.

¶ 4        Prior to trial, the State filed a motion to admit into evidence hearsay statements made by L.H. pursuant to section 115-10 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-10 (West 2018)). After a hearing, where the trial court heard testimony and viewed the video of L.H.'s victim sensitive interview (VSI), the court granted the motion. Specifically, subject to L.H. testifying at trial and being subject to cross-examination, the court allowed testimony of hearsay statements L.H. made to Dr. Richard Hermann, an emergency room physician; Emily Meinert, an emergency room nurse; Shannon Krueger, a certified nurse practitioner with the University of Illinois Medical Evaluation Response Initiative Team (MERIT) program; Kim Larson, the forensic interviewer who conducted the VSI; and L.H.'s mother, G.H. The video of L.H.'s VSI was also admissible, as it was evidence of the questions asked by Larson, the answers given by L.H., and the demeanors of both.

¶ 5        A jury trial took place in September 2022. For scheduling purposes, Meinert was the first witness. She testified she was a nurse who had additional training in dealing with patients who had been sexually assaulted and she treated L.H. in the emergency room on November 14, 2018. Meinert testified L.H. reported she had been sexually assaulted by her father; specifically, he used his fingers and penis in and around her mouth, anus, and vagina. L.H. also reported her father used a banana to sexually assault her. L.H. reported she had felt lower abdominal pain, burning with urination, and itching and redness to her vulva. L.H.

reported the last occurrence was a month and a half earlier. Meinert testified a referral was made to MERIT, the provider specializing in treating pediatric sexual assault victims.

¶ 6            L.H.'s mother, G.H., testified defendant was the father of L.H. and L.H. was six years old when defendant learned he was her father. Defendant moved from Texas to Rockford, Illinois, a few months after a DNA test confirmed defendant was L.H.'s father. Initially, defendant lived with his oldest daughter, and G.H. would drop off L.H. at the daughter's home. At that time, L.H. was not staying overnight with defendant, but she started staying overnight after defendant moved into his own home. After L.H. began spending time with defendant, G.H. noticed some behavioral changes, like more frequently urinating in bed and urinating on herself during the day.

¶ 7            G.H. testified she received a telephone call from L.H.'s daycare provider on November 14, 2018, reporting L.H. was acting strangely and exhibiting signs of sexual abuse. G.H. spoke with L.H. on the telephone, asking L.H. if anyone had touched her "lyric," which was their code word for vagina. L.H. responded affirmatively, stating her father had touched her. G.H. called the Illinois Department of Children and Family Services hotline and was instructed to take L.H. to the hospital. G.H. collected L.H. from daycare and took her to the hospital emergency room. Prior to November 14, G.H. testified it had been a month and a half or two months since L.H. had seen defendant. L.H. had last stayed at defendant's home on August 26, 2018, when she ran away for the second time, so G.H. ceased sending L.H. to defendant's home. After L.H. ran away the second time, G.H. asked L.H. if "anybody did anything to her," but L.H. denied anything had happened.

¶ 8            L.H., 11 years old at the time of the trial, testified her father, identified as defendant, inserted his penis into her vagina many times when she was 7 years old. It occurred at

defendant's home, but she could not remember if it started when she was six or seven years old. She could not remember if defendant touched her vagina with anything else and could not remember if he touched her anus or ever used his hand or mouth on any part of her body. She also could not remember in which room this occurred at defendant's home. L.H. could not remember stating during the VSI that some of the abuse occurred at other homes, including the homes of defendant's sister, mother, aunt, and grandmother and defendant's other girlfriend. L.H. could not remember when she began spending the night at defendant's home, and she could not remember what occurred on August 26, 2018, the last time she ran away from defendant's home.

¶ 9        Krueger testified she was the director of the University of Illinois College of Medicine's MERIT program, which conducts pediatric medical examinations of children suspected of being victims of abuse or neglect. Krueger was a board-certified pediatric nurse practitioner and a board-certified sexual assault nurse examiner for pediatrics. The State tendered Krueger as an expert in the field of child physical and sexual abuse and neglect, with no objection from defendant. Krueger testified she conducted an examination of L.H. on November 15, 2018. Krueger met with G.H. in a separate conference room, and then she met with L.H. privately in the examination room. L.H. disclosed her father had inserted his penis in her vaginal area, her rectal area, and her mouth, and she described liquid coming out of his penis and getting on her back. Krueger conducted a comprehensive examination of L.H., the result of which was normal. Krueger testified a normal examination was not unusual when children do not disclose the abuse immediately because the tissues heal quickly. A normal exam does not rule out sexual abuse, and it was possible for L.H. to heal in the time since her last exposure to defendant. Krueger also noted L.H. had run away from defendant's home several times, and G.H. reported

-4-

L.H. had increased bedwetting, and some daytime accidents, in the two months prior to the exam.

¶ 10 Rebecca Anderson, a detective with the sensitive crimes unit of the Rockford Police Department, testified she met with defendant regarding L.H.'s allegations. Detective Anderson learned defendant's date of birth was January 31, 1983. Detective Anderson also observed the VSI of L.H. on November 21, 2018, at the Carrie Lynn Children's Center, which is a child advocacy center. Detective Anderson identified a copy of the VSI, which was admitted and published to the jury.

¶ 11 The VSI of L.H. was conducted on November 21, 2018, by Kim Larson at the Carrie Lynn Children's Center. In the video, L.H. stated she was seven years old and in the second grade. Larson explained to L.H. that it was important to tell the truth. L.H. stated she lived in an apartment with her mother, her two brothers, and a cousin and her little girl. L.H. stated she went to the doctor because she had a "red mark" from her father on her vaginal area, using the same codeword she used with her mother. The red mark was caused by defendant putting his private part in her vaginal area. L.H. stated it occurred many times, beginning when she was six years old. Larson asked L.H. to describe the first time. L.H. stated it happened at defendant's home. She did not know his address, but he lived next door to his sister. Defendant told L.H. to come into the bathroom; she thought he just wanted her to hand him some tissue, but he told her to come all the way in. Defendant pulled down his pants, and L.H. saw his private parts and his bottom. She saw "gooey yellow" stuff on his private part when he pulled down his pants. He put his private part inside her private part and started pushing in and out. He told her to put her hands on the wall, standing toward the door. L.H. demonstrated by standing facing the wall with her hands on the wall. Defendant stood behind her with his hands on her hips and

pushed in and out. He said, "[O]h yeah." Before he left the bathroom, he also put his private part in her mouth. She saw gooey yellow stuff at that time. L.H. stated defendant left and went downstairs and came back with a banana, which he put in her bottom. The last time she stayed overnight at defendant's apartment, when she was seven years old, L.H. said it happened again. Defendant took her in the bathroom, but this time he started by putting his private part in her mouth.

¶ 12    Larson asked L.H. if the abuse always occurred at defendant's home. L.H. said it also happened at defendant's sister's home, which was next door to defendant's home. L.H. could not remember her name. It also occurred at the homes of defendant's mother, grandmother, aunt, and other girlfriend, known to her as Juicy, all in Rockford. On occasion, defendant put ties around her mouth so she could not scream. Also, one time, he told her to stay in the bathroom, and he went to the kitchen to get hot sauce. He put the hot sauce on his private part and told her to get back on the wall. He put his private part in her vagina, and it "hurted, very bad."

¶ 13    L.H. said she ran away because defendant kept trying to touch her. On a drawing of a nude girl, L.H. circled the parts where defendant touched her. She circled the vaginal area, anus, hands, feet, knees, back ankles, and nipples. L.H. stated defendant touched her vaginal area with his private part and his mouth. Defendant also touched her vaginal area with his hands and pushed it up and down. Defendant licked her hands, feet, knees, nipples, vaginal area, and bottom. Defendant's hand, banana, and private touched her bottom. When defendant put his private part in her mouth, it hurt her throat and smelled like fish. It tasted like a "garbage can." L.H. reported that, when she got in trouble at defendant's home, defendant would pretend to get a belt and then take her in the bathroom. He would set the belt down and do the other things L.H. reported. Defendant told her not to tell anyone, but she had her fingers crossed behind her back.

In addition, L.H. reported defendant took pictures on his phone of her vaginal area and nipples and when he had his private part in her mouth. L.H. said defendant's older son, who was seven or eight years old, used his private part to touch her vaginal area and bottom.

¶ 14    The State rested, and the trial court denied defendant's motion for a directed verdict. Robriawana Hart was the first witness for the defense. She testified she was 26 years old, and defendant had been her significant other for nearly six years. They met in Texas but moved to Rockford in mid-August 2017. For the first month in Rockford, Hart, defendant, and Hart's three-year-old daughter split time living at the homes of defendant's daughter and defendant's two sisters. Defendant and Hart moved into their own apartment in September 2017. Hart described their apartment as two floors, with three bedrooms and a bathroom on the second floor. The bathroom door did not have a functioning lock. One of the bedrooms was used as defendant's studio, defendant and Hart slept in one, and any children at the apartment slept in the third room. Hart's daughter slept in the third room, as did L.H. when she was there. Sometimes one of defendant's daughters, who was about 11 years old, would sleep there, as would defendant's 3-year old son. Hart's niece lived with them for a while, along with the niece's boyfriend and daughter.

¶ 15    Hart testified she first met L.H. when she and defendant ran into her in a store the first week they were in Rockford. L.H. came over to defendant's sister's home that day. Sometime during the summer of 2018, G.H. asked defendant to watch L.H. overnight when G.H. was working. Hart testified defendant worked the third shift for five days a week, and he would go to sleep when he got home. He was never alone with L.H.

¶ 16    Hart testified there was a back-to-school party near their house in August 2018, and L.H. was present and ran away that evening. It was the third time L.H. ran away from their

home. Hart and defendant looked for L.H. but could not find her, so they called the police. Defendant and his brother-in-law found L.H. and brought her home. L.H. reported defendant had hit her in the face.

¶ 17 Defendant testified he was 39 years old at the time of the trial. He was not married, and he had 10 children, although he was only in contact with 6 of them. Sometime in 2016, defendant learned from G.H. that he was the father of L.H. After he and Hart moved to Rockford in August 2017, defendant had the opportunity to meet L.H. Around the time defendant began working, in March 2018, G.H. asked if L.H. could stay overnight at defendant's home while she worked. Defendant testified he worked the third shift from Wednesday through Saturday, but he often picked up extra shifts. Defendant would generally go to bed when he got home from work. On the weekends L.H. stayed over, she would be dropped off by G.H. before defendant arrived home from work.

¶ 18 Sometime in April 2018, after L.H. had stayed at defendant's home a few times, she ran away from defendant's home while he was at work. After that, L.H. did not stay at defendant's home for a few weeks, but she returned in May 2018. Defendant testified to the back-to-school event outside the apartment in August 2018, which L.H. attended, and to his efforts to locate L.H. after she ran away that night. Defendant eventually located L.H., grabbed her, and smacked her. He denied telling Detective Anderson, upon finding L.H., he was "a man and knows how to restrain a woman so he was able to get her to come with him." Defendant denied ever touching L.H.'s mouth, vaginal area, or anus. Defendant renewed his motion for a directed verdict, which was denied.

¶ 19 The State recalled Detective Anderson, who testified she met with defendant on December 20, 2018, in a conversation that was audio and video recorded. During that

conversation, in relation to L.H. running away, defendant stated "he is a man and knows how to restrain a woman."

¶ 20        The jury found defendant guilty of all eight counts of predatory criminal sexual assault of a child. Defendant hired new posttrial counsel, who filed a posttrial motion for a new trial and an amended motion for a new trial. The amended motion alleged prosecutorial misconduct for focusing on the birthdates and ages of defendant's 10 children in an attempt to attack defendant's character, ineffective assistance of trial counsel, insufficiency of the evidence, and insufficiency of the jury deliberations where the jury returned a verdict after about 20 minutes.

¶ 21        A hearing was held on defendant's amended motion for a new trial in August 2024. Defendant testified his trial counsel did not review the VSI with him prior to trial, so he was surprised by some of the allegations and statements by L.H. in the VSI. Also, defendant informed his trial counsel that Jilleena Bailey, also known as Juicy, the person L.H. described as defendant's other girlfriend, would testify she never met L.H., even though L.H. claimed some of the abuse took place at Bailey's home. Defendant's daughter Yasmeen Diaz would have testified that L.H. was only dropped off at her home one time and L.H. did not stay long. Defendant also asserted error because his trial counsel did not challenge L.H.'s VSI statements claiming the assaults had also taken place at defendant's mother's home, even though his mother had been deceased since 1994, and L.H.'s testimony that defendant's son also assaulted her, when defendant's son was only two years old at the time.

¶ 22        Defendant's trial counsel testified he became defendant's attorney of record a few months before trial. Defendant was in custody at that time, so trial counsel met with him at the jail three or four times prior to trial to review discovery and practice testimony. Counsel, who

was not defendant's counsel at the time of the section 115-10 hearing, viewed the VSI prior to trial, but he did not play it for defendant. Counsel discussed with defendant who to include on the combined witness list. Counsel testified he interviewed some of the witnesses provided to him by defendant but decided not to call them at trial. One of those witnesses was Diaz, who had filed a petition for an order of protection against defendant in 2016. Counsel testified he made a choice to not draw attention to L.H.'s allegation that defendant's son also assaulted her.

¶ 23    Posttrial counsel provided the trial court with an unnotarized statement by Bailey, which stated she was the mother of one of defendant's children and L.H. had never been to her home. Bailey had never met, spoken to, or seen L.H.

¶ 24    The trial court denied the amended motion for a new trial. Relevant to this appeal, the court found the evidence was sufficient to support the jury's verdict. The court also determined trial counsel was not ineffective for failing to perfect the impeachment of L.H. for her statements during the VSI that defendant's son had also sexually assaulted her and defendant had assaulted her at his mother's home. Further, defendant failed to establish that, if Bailey had been called to testify she had never met L.H., the outcome of the trial would have been different.

¶ 25    The matter proceeded to sentencing, and the trial court sentenced defendant to six years in prison on each count, for a cumulative total of 48 years in the Department of Corrections.

¶ 26    This appeal followed.

¶ 27                                    II. ANALYSIS

¶ 28    Defendant raises two issues on appeal. First, he contends the trial court erred in admitting L.H.'s hearsay statements regarding uncharged conduct by him, which were made to

healthcare providers and during the VSI. Second, defendant contends he received ineffective assistance of counsel regarding the imperfect impeachment of L.H.

¶ 29                   A. Admissibility of L.H.'s Hearsay Statements

¶ 30          Defendant argues some of the hearsay statements made by L.H. were inadmissible and the trial court erred in admitting such statements at trial. Specifically, defendant contends L.H.'s hearsay statements about uncharged conduct by him were inadmissible under section 115-10 of the Code (725 ILCS 5/115-10 (West 2018)). Defendant acknowledges the error was forfeited but contends we may review it as first-prong plain error. Alternatively, defendant argues both trial and posttrial counsel were ineffective for failing to object to the admission of statements pertaining to the uncharged conduct. The State argues the hearsay statements by L.H. regarding some of defendant's uncharged conduct were admissible under section 115-10 of the Code (*id.*) because they provided necessary details and context to the inappropriate relationship between defendant and L.H.

¶ 31          To preserve an issue for appeal and avoid forfeiture, a defendant must both object at trial and raise the issue in a posttrial motion. *People v. Jackson*, 2022 IL 127256, ¶ 15. The plain error rule is a narrow exception to forfeiture principles that allows a reviewing court to review a forfeited clear and obvious error under certain circumstances. *People v. Johnson*, 2024 IL 130191, ¶ 43; see Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967). There are two alternative prongs to the plain error rule. *Johnson*, 2024 IL 130191, ¶ 43. A reviewing court may review a forfeited error under the first prong if the evidence was so close the error alone threatened to tip the scales of justice against the defendant. *Id.* Alternatively, the second prong of the plain error rule allows review of errors that are so serious they affected the fairness of the defendant's trial, regardless of the closeness of the evidence. *Id.* Under both prongs, the defendant bears the burden of

persuading the reviewing court to excuse the forfeiture. *Id.* Here, defendant argues first-prong

plain error. The first step in the plain error analysis requires the defendant to demonstrate a clear

or obvious error was committed. *People v. Prather*, 2022 IL App (4th) 210609, ¶ 17.

¶ 32            It is undisputed L.H.'s statements to medical providers, to her mother, and during

the VSI were made outside of the courtroom and were offered for the truth of the matters

asserted, making them hearsay. See *People v. Safranek*, 2025 IL App (4th) 240967, ¶ 96

("Hearsay is an out-of-court statement offered to establish the truth of the matter asserted."). In

general, hearsay statements are not admissible at trial, unless a hearsay exception applies. Ill. R.

Evid. 802 (eff. Jan. 1, 2011). One such exception is contained in section 115-10 of the Code (725

ILCS 5/115-10 (West 2018)), which provides:

> "(a) In a prosecution for a physical or sexual act perpetrated upon or
>
> against a child under the age of 13, *** the following evidence shall be admitted
>
> as an exception to the hearsay rule:
>
>> (1) testimony by the victim of an out of court statement made by
>>
>> the victim that he or she complained of such act to another; and
>>
>> (2) testimony of an out of court statement made by the victim
>>
>> describing any complaint of such act or matter or detail pertaining to any
>>
>> act which is an element of an offense which is the subject of a prosecution
>>
>> for a sexual or physical act against that victim.
>
> (b) Such testimony shall only be admitted if:
>
>> (1) The court finds in a hearing conducted outside the presence of
>>
>> the jury that the time, content, and circumstances of the statement provide
>>
>> sufficient safeguards of reliability; and

(2) The child ***

(A) testifies at the proceeding; or

(B) is unavailable as a witness and there is corroborative

evidence of the act which is the subject of the statement[.]" *Id.*

§§ 115-10(a), (b)(1)-(2).

¶ 33    When the State seeks to admit out-of-court statements into evidence pursuant to

section 115-10 of the Code, the trial court must first determine if the statements meet the

statute's requirements. *In re E.H.*, 224 Ill. 2d 172, 179 (2006). This court reviews for an abuse of

discretion whether the admissibility requirements of section 115-10 of the Code were satisfied.

*People v. Butler*, 2025 IL 130988, ¶ 31.

¶ 34    Defendant does not challenge the admissibility of the entire VSI. Rather,

defendant contends section 115-10 of the Code creates a hearsay exception for statements related

to the charged offenses, not the uncharged offenses, so it was error to admit hearsay evidence of

the uncharged incidents. The hearsay statements challenged by defendant were L.H.'s statements

alleging (1) defendant inserted his penis in L.H.'s anus, (2) defendant inserted a banana in L.H.'s

anus, (3) defendant took photographs of L.H. naked and engaging in sexual acts, and

(4) defendant made L.H. watch himself and Hart engaging in sexual acts.

¶ 35    In support of his argument, defendant relies on *People v. Anderson*, 225 Ill. App.

3d 636 (1992). In *Anderson*, the defendant was charged with aggravated criminal sexual assault

for an incident that occurred on a single day with the defendant's adopted son. *Id.* at 650. The

defendant argued hearsay testimony by the victim regarding uncharged sexual acts by the

defendant over a two-year period was not encompassed within the meaning of section 115-10 of

the Code. *Id.* The Appellate Court, Third District, agreed, noting, although it "believe[d] that

section 115-10 [of the Code] [wa]s broad enough to encompass some matters other than the sexual acts upon which the charge is based," such testimony should not have been admitted under the particular facts of the case. (Emphasis omitted.) *Id.* at 651.

¶ 36        The same reasoning was followed by the Appellate Court, Second District, in *People v. Kinnett*, 287 Ill. App. 3d 709, 710-11, 714 (1997), wherein the defendant was charged with aggravated criminal sexual abuse for an incident that occurred at a campground during a holiday weekend. The trial court excluded hearsay statements made by the victim regarding other acts committed by the defendant at his home on other dates. *Id.* at 713. In response to the State's argument the statements were admissible under section 115-10 of the Code, the appellate court applied the reasoning of *Anderson* and agreed that section did not provide an exception for the hearsay statements regarding the uncharged incidents. *Id.* at 713-14.

¶ 37        Later, the Second District reached the opposite conclusion in *People v. Monroe*, 366 Ill. App. 3d 1080, 1082 (2006), where the defendant was convicted of sexually assaulting his stepson and stepdaughter during a two-year period. The trial court allowed hearsay evidence that the defendant had the victims tickle each other on their inner thighs in front of the defendant, even though the defendant was not charged for the tickling incident. *Id.* at 1089-90. The appellate court held the testimony regarding the tickling incident was admissible under section 115-10 of the Code because it went to the details of how the defendant was abusing the victims over a long period of time. *Id.* at 1091.

¶ 38        This court followed the reasoning of *Monroe* in *People v. Boling*, 2014 IL App (4th) 120634, ¶ 87. In *Boling*, the defendant was charged with predatory criminal sexual assault of a child for various acts of sexual penetration committed with his girlfriend's daughter, which took place during a nine-month period. *Id.* ¶¶ 5-6. The trial court admitted several hearsay

-14-

statements made by the victim regarding uncharged acts by the defendant, including a criminal offense against someone else, under section 115-10 of the Code. *Id.* ¶ 81. This court found no error in that decision, concluding "under section 115-10(a)(2) of the Code, a 'matter or detail pertaining to any act which is an element of an offense' [citation] may include facts about the victim's relationship with the defendant if relevant to explain the context within which the alleged charged acts occurred." *Id.* ¶ 87; see *People v. Schmitt*, 204 Ill. App. 3d 820, 829 (1990) (finding no error in admitting hearsay allegations of other crimes by the defendant under section 115-10 of the Code because it pertained to details of the victim's complaint of abuse).

¶ 39 The reasoning of *Monroe* and *Boling* is applicable under the facts of this case. Here, defendant was not charged with a single incident on a single date but rather a pattern of sexual abuse that occurred over many months. The challenged statements about the various uncharged acts explained and further described the inappropriate relationship between defendant and L.H. and provided the context within which the charged acts occurred over many months, such that they described details pertaining to the charged offenses. We conclude the trial court did not abuse its discretion in admitting the hearsay statements under section 115-10 of the Code.

¶ 40 Under the plain-error doctrine, "the defendant has the burden of persuading the court to excuse his forfeiture." *Jackson*, 2022 IL 127256, ¶ 19. We hold defendant has not demonstrated that a clear or obvious error occurred with respect to the admissibility of L.H.'s statements regarding uncharged conduct by defendant exceeding the scope of section 115-10 of the Code. As such, we honor defendant's forfeiture and need not proceed further with the analysis under the plain error doctrine.

¶ 41 Defendant's alternative arguments that his trial and posttrial counsels were ineffective for failing to challenge the admissibility of the hearsay statements also fail, as

defendant has not shown a clear or obvious error. See *People v. Jones*, 2020 IL App (4th) 190909, ¶ 179 ("Absent a clear or obvious error \*\*\*, neither the doctrine of plain error nor a theory of ineffective assistance affords any relief from the forfeiture.").

¶ 42                                B. Ineffective Assistance of Counsel

¶ 43        Defendant argues his trial counsel provided ineffective assistance of counsel when he failed to highlight and perfect the impeachment of L.H. based on some of the inconsistencies in the statements L.H. made in her VSI. Defendant acknowledges his trial counsel did attempt to "highlight some of the inconsistencies in the VSI" but contends counsel's impeachment of L.H. was imperfect. Specifically, defendant contends counsel failed to (1) introduce evidence establishing defendant's mother had been dead since 1994, so any abuse could not have occurred at her house, (2) call Bailey to testify she never met L.H., so any abuse could not have occurred at her house, and (3) emphasize defendant's son was three or four years old at the time L.H. accused him of committing sexual assault. Defendant further contends his posttrial counsel was similarly ineffective for failing to adequately present the first and third claims of error. Further, defendant contends the trial court erred when it concluded, following a hearing that addressed defendant's claims of ineffective assistance of trial counsel, defendant did not receive ineffective assistance of counsel.

¶ 44        Claims of ineffective assistance of counsel are governed by the familiar standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). "A defendant must show that his counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that the result of the proceeding would have been different but for counsel's unprofessional errors." *People v. Jones*, 2023 IL 127810, ¶ 51. Both prongs under *Strickland* must be satisfied to succeed with an ineffective assistance of counsel claim. *People v.*

*Brown*, 2024 IL 129585, ¶ 28. We review *de novo* whether counsel rendered ineffective assistance, but we will only disturb a trial court's factual findings if they are against the manifest weight of the evidence. *People v. Logan*, 2022 IL App (4th) 210492, ¶ 91.

¶ 45          1. *Failure to Introduce Evidence of Defendant's Mother's Death*

¶ 46          During the VSI, L.H. reported defendant sexually abused her at locations other than defendant's home. One of the locations reported by L.H. was defendant's mother's home. Defendant argues his trial counsel's failure to introduce evidence of defendant's mother's death in 1994, making abuse at her home more than 20 years later impossible, was ineffective assistance. Defendant contends there was no sound trial strategy for failing to impeach L.H. with this information. Defendant asserts such information would have caused the jury to question L.H.'s veracity, leading to a different outcome at trial. Additionally, defendant contends his posttrial counsel was ineffective for failing to adequately raise the issue posttrial, and his amended motion for a new trial would have been allowed if the issue had been properly raised.

¶ 47          The State solely addresses the prejudice prong of the *Strickland* test. To establish prejudice under *Strickland*, defendant must show "a reasonable probability exists that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Brown*, 2024 IL 129585, ¶ 28. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v. Houston*, 229 Ill. 2d 1, 4 (2008). Here, the issue arises in the context of the impeachment of a witness, albeit the primary witness, and the question is whether, had evidence of defendant's mother's death been presented, there is a reasonable probability such evidence would have led the jury to doubt L.H.'s veracity and the remainder of her claims of sexual abuse so the jury would have had a reasonable doubt of defendant's guilt. See *People v. Caballero*, 126 Ill. 2d 248, 260 (1989) ("Under *Strickland*, a defendant who

-17-

demonstrates that his counsel's trial performance fell below prevailing professional norms must also show that there is a 'reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.' " (quoting *Strickland*, 466 U.S. at 695)).

¶ 48    "*Strickland* requires a defendant to 'affirmatively prove' that prejudice resulted from counsel's errors." *People v. Johnson*, 2021 IL 126291, ¶ 55. "Satisfying the prejudice prong necessitates a showing of actual prejudice, not simply speculation that [the] defendant may have been prejudiced." *People v. Patterson*, 2014 IL 115102, ¶ 81.

¶ 49    Here, defendant has failed to affirmatively prove any prejudice resulted from his trial counsel's failure to impeach L.H.'s statement with evidence of the death of defendant's mother. In the VSI, L.H. described meeting several of defendant's relatives, referring to them as defendant's sisters, aunt, mother, grandmother, and other girlfriend. L.H. described visiting the homes of these various relatives, all when she was six and seven years old and had recently been introduced to defendant. When defendant testified, he similarly referenced having two sisters, one of whom lived next door to him, and having another girlfriend. In addition, defendant's pretrial services bond report indicated he resided with his grandmother. Although L.H. described much of the abuse by defendant as taking place in his home, she stated in the VSI that some of the abuse happened at the homes of defendant's relatives. At defendant's trial, L.H. could not recall making those statements. The jury, having been presented with the VSI, L.H.'s prior statements to third parties, and L.H.'s and defendant's testimony at trial, was free to assess L.H.'s veracity and the weight to be given to her allegations. See *People v. Gray*, 2017 IL 120958, ¶ 35 (stating a court of review will not substitute its judgment for that of the trier of fact on questions involving the weight of the evidence or the credibility of the witnesses). Defendant has failed to show proof of his mother's death would have had more than a speculative effect on

the veracity of L.H.'s claims of sexual abuse by defendant made during the VSI and in court or such proof would have created a reasonable probability the outcome of the trial would have been different. See *Patterson*, 2014 IL 115102, ¶ 81.

¶ 50　　　　Additionally, we note that, if L.H. was confused regarding defendant's mother, there may have been a good reason. During defendant's trial, there was an incident where a spectator was questioned regarding some conversations with witnesses during a court recess. During questioning by the trial court, the spectator informed the court she was defendant's mother. While she was evidently not defendant's mother—the presentence investigation report indicates defendant's mother was deceased—her claim does give some credence to L.H.'s confusion.

¶ 51　　　　Accordingly, we conclude defendant has failed to demonstrate he suffered prejudice from his trial counsel's failure to attempt to impeach L.H.'s statement that some of the sexual abuse occurred at his mother's home. Thus, defendant cannot prevail on a claim of ineffective assistance of either his trial or posttrial counsel for failing to introduce evidence of his mother's death.

¶ 52　　　　　　　　　　　　*2. Failure to Call Bailey to Testify*

¶ 53　　　　During the VSI, L.H. reported defendant sexually abused her at Juicy's house. Defendant contends L.H. was referring to Bailey, who was also known as Juicy, and his trial counsel was ineffective for failing to call Bailey to testify although defendant provided Bailey's name to counsel prior to trial. Defendant asserts Bailey would have testified she never met L.H. and, therefore, L.H. could not have been assaulted at her house.

¶ 54　　　　Bailey's potential testimony was discussed during the hearing on defendant's amended motion for a new trial, with new posttrial counsel representing defendant. Trial counsel

testified, if he was provided with Bailey's name, he would have interviewed her prior to trial. He acknowledged he did not call her to testify at trial and Bailey was not listed as a witness on the agreed witness list. Posttrial counsel could not secure Bailey's presence at the hearing, but he did present an unnotarized statement from Bailey. The State acknowledged the problem with the unnotarized nature of the statement but argued it did not matter because her testimony would not have changed the result of the trial. The trial court read the statement in court:

> "I am the mother of one of [defendant's] daughters. It has come to my attention that one of [defendant's] other daughters is claiming to have been to my home. I have spoken with a female detective regarding this allegation, and I told her that I've never spoken to or seen [L.H.] before. Neither me nor any of my four children have ever met or spoken to her. It was also said that she referred to me by my nickname which is Juicy, that name is only used by people who do not know me personally. She does not know my real name, where I live, or any of my children's names. I am embarrassed to have my name used for information that is untrue. When I spoke to the detective, Rebecca, I answered all of her questions honestly, the same as I am stating here. I have never met or spoken to the young girl, [L.H.]"

¶ 55     After the hearing, the trial court determined trial counsel was not ineffective for his decision not to call Bailey as a witness at trial. The court noted defendant personally confirmed the witness list presented to the court prior to trial. Also, the information offered by posttrial counsel regarding Bailey's potential testimony did not establish that, had she been called to testify at trial, there was a substantial probability the outcome of the trial would have been different. Defendant contends the court erred in this conclusion.

¶ 56        The State solely addresses the prejudice prong of the *Strickland* test, arguing, even assuming Bailey had testified in accordance with her unnotarized statement, defendant has not shown a reasonable probability the result of the trial would have been different. This was the trial court's conclusion after the hearing on defendant's amended motion for a new trial. We agree. As the State points out, the fact Bailey never met L.H. does not foreclose the possibility L.H. was at Bailey's home or was abused in her home. Also, Bailey's potential testimony does not contradict or rebut any of the evidence establishing defendant sexually assaulted L.H. numerous times in his own home. As noted above, the jury had ample opportunities to assess L.H.'s veracity and the weight to be given to her allegations. We conclude defendant has not shown a reasonable probability Bailey's testimony would have changed the outcome of defendant's trial had she testified. See *Caballero*, 126 Ill. 2d at 260. Accordingly, defendant cannot prevail on a claim on ineffective assistance of trial counsel for failing to call Bailey to testify at trial.

¶ 57                    3. *Reference to Defendant's Son*

¶ 58        During the VSI, L.H. stated defendant's son committed similar sexual acts against her. Defendant argues he only had one son at the time, who was only three or four years old at the time of the alleged incidents, so trial counsel provided ineffective assistance by failing to challenge L.H.'s credibility with the incredible nature of this allegation. This issue was not raised in defendant's posttrial motion, and defendant contends posttrial counsel's failure to do so was also ineffective assistance of counsel.

¶ 59        Here, the State addresses both prongs of the *Strickland* analysis, arguing trial counsel's decision not to emphasize this information in front of the jury was a reasonable trial strategy and defendant has not shown the decision was prejudicial to his case.

¶ 60    L.H. clearly stated during the VSI that she was not referring to defendant's "little" son but rather to a boy who was seven or eight years old. L.H. could not remember the boy's name. Trial counsel was questioned at the hearing on defendant's amended motion for a new trial regarding this allegation by L.H., and he testified it was not something he wanted to emphasize in front of the jury. Considering L.H.'s statements in the VSI, we determine that to be a reasonable trial strategy. See *Jones*, 2023 IL 127810, ¶ 51 (holding matters of trial strategy are generally immune from claims of ineffective assistance of counsel); see also *People v. Westfall*, 2018 IL App (4th) 150997, ¶ 62 ("The decision of whether and how to conduct a cross-examination is generally a matter of trial strategy."). Thus, defendant's claim of ineffective assistance of counsel fails on this basis. See *People v. Simpson*, 2015 IL 116512, ¶ 35 ("A defendant must satisfy both prongs of the *Strickland* test and a failure to satisfy any one of the prongs precludes a finding of ineffectiveness."). As defendant cannot prevail on his claim of ineffective trial counsel, his claim of ineffectiveness of posttrial counsel on this basis also fails.

¶ 61    In addition, defendant has failed to establish a reasonable probability, had trial counsel emphasized the age of defendant's young son, the outcome of the case would have been different. L.H.'s confusion regarding the familial relationship between defendant and this unnamed boy does not challenge the veracity of L.H.'s claims of abuse by defendant. To reiterate, the jury had ample opportunities to assess L.H.'s veracity and the weight to be given to her allegations. Thus, we conclude defendant has not shown a reasonable probability that focusing on the identity of the unnamed boy would have changed the outcome of defendant's trial. See *Caballero*, 126 Ill. 2d at 260.

¶ 62                                    4. *Cumulative Error*

¶ 63        Lastly, defendant contends, even if none of his individual claims of ineffective assistance of counsel warrant a new trial, cumulatively, they deprived him of his right to effective assistance of counsel and denied him due process. The doctrine of cumulative error, in general, provides, when individual trial errors do not entitle a defendant to appellate relief, more than one error, when considered cumulatively, may serve to deny a defendant a fair trial. *People v. Quezada*, 2024 IL 128805, ¶ 46.

¶ 64        We are unpersuaded. As we have concluded there were no successful ineffective assistance of counsel claims, defendant has not established any errors cumulatively deprived him of due process. See *People v. Gilker*, 2023 IL App (4th) 220914, ¶ 104 ("Because we have concluded that each of defendant's claims fails on the merits, his argument of cumulative error based on those individual claims also fails.").

¶ 65                                III. CONCLUSION

¶ 66        For the reasons stated, we affirm the trial court's judgment.

¶ 67        Affirmed.

*People v. Jones*, 2026 IL App (4th) 250581

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Winnebago County, No. 19-CF-252; the Hon. Brendan A. Maher, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Santiago A. Durango, and Kelly M. Taylor, of State Appellate Defender's Office, of Ottawa, for appellant. |
| **Attorneys for Appellee:** | J. Hanley, State's Attorney, of Rockford (Patrick Delfino, David J. Robinson, and Courtney M. O'Connor, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |